### ROCKEFELLER v. O'BRIEN, County Treasurer.

(District Court, N. D. Ohio, E. D.  May 13, 1915.)

No. 274.

1. TAXATION ⬦608—ILLEGALITY OF TAX—INJUNCTION.

Under the law of Ohio a suit in equity may be maintained to enjoin the collection of a tax which is illegal or invalid.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1230–1241; Dec. Dig. ⬦608.]

2. STATUTES ⬦205—CONSTRUCTION—GENERAL RULES.

All parts of a statute should be construed together in order to ascertain the legislative purpose in enacting it.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 282; Dec. Dig. ⬦205.]

3. STATUTES ⬦245—CONSTRUCTION OF REVENUE STATUTE.

A taxing statute must be construed as part of the legislative taxing system of the state, and if there is any doubt as to its meaning the construction must be strict, and the doubt resolved in favor of the citizen.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 326; Dec. Dig. ⬦245.]

4. TAXATION ⬦58—SITUS OF INTANGIBLE PERSONAL PROPERTY—RESIDENCE OF OWNER.

Gen. Code Ohio, §§ 5373, 5374, provide that a person who has had his actual or habitual place of abode in the state for the larger portion of the 12 months next preceding the annual tax listing day shall, for the purposes of taxation, be deemed a resident of the state, unless he shall before said day have changed his place of abode to a place without the state with the bona fide intention of continuing actually to abide permanently without the state; that if a person so removing from the state returns to it to reside within 6 months thereafter, it shall be prima facie evidence that he did not intend to permanently change; that the fact that a person so residing within the state does not exercise the right to vote shall not of itself constitute him a nonresident; and that no provision of the act shall be construed to repeal any statute previously in force as to the taxation of personal property. *Held*, that under such statute, construed with prior statutes, the intention is of great, if not controlling, importance, and that a person who has his actual place of abode in the state for the specified time, and on the tax listing day, may still be a nonresident, and not subject to taxation on his intangible property, where he has a permanent residence in another state, of which he is a citizen,

---
⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

to which he at all times intended to return, and to which he would have returned before such day, but for illness in his family.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 134, 135; Dec. Dig. ☞58.]

5. TAXATION ☞93—SITUS OF TANGIBLE PROPERTY.

Under the statutes of Ohio, as construed by its Supreme Court, tangible personal property situated within the state is there taxable, irrespective of the residence of the owner.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 182–188; Dec. Dig. ☞93.]

In Equity. Suit by John D. Rockefeller against P. C. O'Brien, County Treasurer of Cuyahoga county, Ohio. Decree for complainant.

Kline, Clevenger, Buss & Holliday and Squire, Sanders & Dempsey, all of Cleveland, Ohio, for plaintiff.

Cyrus Locher and Fred W. Green, both of Cleveland, Ohio, for defendant.

CLARKE, District Judge. The controversy in this case involves a great sum of money, but this does not increase the difficulty of a just decision of it. The federal and state courts of the country have been in singular accord in condemning many of the methods by which Mr. Rockefeller has acquired much of his great fortune, but the character of these methods is not involved in this suit, for the claim of the county assumes that he is the lawful owner of the $311,000,000 and more invested in "bonds, stocks, joint-stock companies, annuities and otherwise," upon which it seeks to collect the tax, the collection of which the bill in the suit prays may be enjoined. The facts of the case which are essential to a decision of it, and which are either admitted or are not seriously disputed, are as follows:

In 1884 the plaintiff, John D. Rockefeller, who theretofore had been a citizen and resident of the city of Cleveland, in the state of Ohio, moved to the city of New York, and established there his permanent home, and has there maintained it ever since. Since that year he has exercised in New York state the rights and privileges of citizenship, including the right to vote at state, county, and municipal elections, and has been regularly taxed by the proper authorities of that city and state upon his personal property, including doubtless the property involved in this suit. The plaintiff for a long time has been the owner of a home in the village of East Cleveland, Cuyahoga county, Ohio, known as Forest Hill.

On or about the 24th day of June, 1913, the plaintiff came from his home in New York to Forest Hill for the purpose of spending the summer season, bringing with him his family, servants, and secretary, as had been his custom, with occasional exceptions, for many years. The uncontradicted evidence clearly shows that it was his intention to return to New York, as had been his usual custom, about the month of October; that plans were made for such return, but that the illness of Miss Spellman, a member of his family, and the illness of his wife, led to the deferring of his return to New York from time to time until after the first Monday, the 3d day, of February, 1914, which, under

the statute of Ohio then in force, was tax listing day for that year. There can be no doubt upon the testimony introduced that Mr. Rockefeller's coming to East Cleveland was for the purpose of a summer visit, without any intention on his part of giving up his residence in New York, but with the fixed purpose to return to his New York home in the autumn. Neither can it be disputed on the evidence introduced that the occasion of his continuing longer than usual in Cleveland was the sickness of members of his family and his desire to be with them. The evidence is conclusive that Mr. Rockefeller made arrangements more than once between October 1, 1913, and February 1, 1914, to return to New York, but that, acting under advice of his family physician and other physicians called in consultation with him, it was concluded that it would not be prudent, owing to her illness, to remove his wife to New York, and his family physician testifies that it was important to her comfort and the proper treatment of the malady with which she was afflicted that her husband should be with her.

Immediately after February 3, 1914, the tax listing day for that year, notice was served upon the plaintiff that he must make return of all of his property, including "moneys invested in bonds, stocks, joint-stock companies, annuities and otherwise" of which he was the owner on the day preceding the first Monday of February, 1914. The plaintiff failed to make a return in form and substance satisfactory to the deputy state tax commissioners, who thereupon, pursuant to authority vested in them by law, made out and filed the return which they were of opinion the plaintiff should have made, which return included the $310,000,000 item of intangible property which is the subject of controversy in this case. The tax assessed upon the amount of this return was certified to the defendant, the county treasurer, for collection, and in this suit the plaintiff seeks to enjoin such collection upon two grounds, viz.:

First. For the reason, as is claimed, that under the facts proved the plaintiff cannot properly be taxed upon his intangible property under the provisions of sections 5373 and 5374 of the General Code of Ohio under authority of which it is conceded the tax commissioners acted in making the return in dispute.

Second. For the reason that, if the plaintiff were subject to taxation under the terms of sections 5373 and 5374 of the General Code of Ohio, nevertheless the collection of the tax should be enjoined, because the sections are in conflict with the Constitution of the United States and void, because to give them effect would be to deprive the plaintiff of his property without due process of law and to deny to him the equal protection of the laws, thus violating the fifth and fourteenth amendments to the Constitution of the United States.

The disputed part of the return by the deputy state tax commissioners is as follows, viz.:

1. Two automobiles, valued at the sum of.......................$      8,000
2. "The amount of all moneys invested in bonds, stocks, joint-stock
    companies, annuities and otherwise," value at the sum of.. 311,040,337

To be more specific, the claim is that the assessments described are both illegal and void for the reason that at the time they were levied

the plaintiff was a citizen and bona fide resident of the state of New York, and was not a resident or citizen of the state of Ohio; that the personal property described in the second item was never in the state of Ohio, and that its legal situs at the time said assessment was made was in the state of New York; and that therefore there was no jurisdiction in the taxing authorities of Ohio to return the same for purposes of taxation, as was done, and that the collection of the tax would be a taking of the property of the plaintiff without due process of the law, and would be a denial to the plaintiff of the equal protection of the laws, in violation of the fifth and fourteenth amendments to the Constitution of the United States.

The defendant denies, for want of information, the allegation in the petition that the plaintiff intended to return to New York in the fall of 1913, avers that on the 3d day of February, 1914, he was a bona fide resident of the city of East Cleveland, Cuyahoga county, Ohio, and that the deputy state tax commissioners, pursuant to law, made the return of the plaintiff's property for taxation which is complained of in the bill. It is also averred that upon the 3d day of August, 1914, the plaintiff filed with the auditor of Cuyahoga county, Ohio, his complaint to the district board of complaints for said county, in which he averred that the two automobiles and the moneys invested in bonds, etc., which had been listed for taxation as stated in the bill, were not taxable in Ohio, which complaint was rejected. It is further averred that the plaintiff did not appeal from this decision of the board of complaints within 30 days from its decision, nor at any time, and that therefore said finding of the district board of complaints is still in full force.

[1] This last objection made in the answer, that this action does not properly lie, because the plaintiff did not appeal from the decision of the district board of complaints to the tax commission of Ohio, is not seriously urged. That the suit is properly brought, so that the relief prayed for may be granted if the facts of the case justify it, is very clear under authority of the following decisions, all rendered in cases originating under Ohio law: Cummings v. National Bank, 101 U. S. 153, 25 L. Ed. 903; Grether v. Wright, 75 Fed. 742, 23 C. C. A. 498; Lander v. Mercantile Nat. Bank, 118 Fed. 785, 55 C. C. A. 523; McKnight v. Dudley, 148 Fed. 204, 78 C. C. A. 162.

The really essential controversy in the case is whether the assessment upon $311,040,337 of property of the plaintiff invested in bonds, stocks, joint-stock companies, annuities and otherwise (intangible property) is illegal or valid, and the decision of this question depends wholly upon whether or not the plaintiff on February 3, 1914, was subject to the terms of sections 5373 and 5374 of the General Code of Ohio, when the return for taxation was made, and, if he was subject to them, whether or not they were at the time valid constitutional laws. *It is conceded by the defendant that the liability of the plaintiff depends entirely upon his coming within the provisions of these sections and upon their validity, and no claim is made of liability under any other law.*

These sections of the General Code were originally the act of the General Assembly of April 14, 1900 (94 O. L. 162), which was carried

practically unchanged into the General Code, except that it was divided into two parts or sections. It will contribute to clearness and brevity in the discussion of whether or not this act applied to a man so situated as the evidence and the statement of facts in this opinion show Mr. Rockefeller was situated when the return was made to separate the act into four clauses as follows (section 5373):

(1) "Any person who shall have had his actual or habitual place of abode in this state for the larger portion of the twelve months next preceding the day before the second Monday of April in each year, shall, for the purposes of taxation, be deemed a resident of this state, and the personal property which he is required by law to list shall be taxable therein, *unless he shall on or before said day have changed his said place of abode to a place without this state with the bona fide intention of continuing actually to abide permanently without this state.*"

(2) "The fact that a person who has so changed his actual place of abode, within six months from so doing, again abide within this state, *shall be prima facie evidence that he did not intend permanently to have his actual place of abode without this state.* Such person, so changing his actual place of abode and not intending permanently to continue it without this state and not having listed his property for taxation within this state, *shall be deemed to have resided on the day when such property should have been listed, at his last actual or habitual place of abode within this state.*"

(3) "And the fact that a person whose actual or habitual place of abode during the greater portion of said twelve months has been within this state, does not claim or exercise the right to vote at public elections within this state, *shall not of itself constitute him a nonresident of this state within the meaning of this section.*"

(4) "Nothing herein contained shall relieve any person or property, who or which, but for this act, would be subject to taxation within this state; and no provision of this act shall be construed to repeal any statute now in force as to the taxation of personal property."

This last clause—(4)—is section 5374 of the General Code and reads:

"A person or property subject to taxation within this state, shall not be relieved therefrom by the next preceding section, nor shall any provision thereof repeal any statute now in force as to the taxation of personal property."

We shall consider, first, Did Mr. Rockefeller come within the terms of this act on tax listing day, February 3, 1914? If he did not come within its terms, the case will be ended, and the relief prayed for should be granted. If he did come within its terms, then the further question as to the constitutionality of the act must be decided. In the discussion of the statute involved, for the purpose of arriving at the legislative intent, it will be well to keep in mind the following three familiar rules prescribed for the construction of statutes:

[2] First. *The whole statute must be read together in order to ascertain what the expressed purpose of the Legislature was in enacting it.* Peck v. Jenness, 7 How. 612, 12 L. Ed. 841:

In construing a statute, every section, provision, and clause should be expounded by reference to each other; and if possible every clause and provision be given and have the effect contemplated by the Legislature. One portion of the statute should not be construed to annul or destroy what has been clearly granted by another. The most general and absolute terms of one section may be qualified and limited by conditions and exceptions contained in another so that all may stand together. Brown v. Duchesne, 19 How. 183, 15 L. Ed. 595; Gayler v. Wilder, 10 How. 477, 13 L. Ed. 504.

224 F.—35

[3] Second. If there is doubt as to the meaning of a statute such as this under consideration, the construction must be strict, and the doubt must be resolved in favor of the citizen upon whom the burden is sought to be imposed.

Treat v. White, 181 U. S. 264, 21 Sup. Ct. 611, 45 L. Ed. 853:

"There must be certainty as to the meaning and scope of language imposing any tax, and doubt in respect to its meaning is to be resolved in favor of the taxpayer."

Insurance Company v. State, 79 Ohio St. 305, 87 N. E. 259:

"The rule is that 'statutes imposing taxes and public burdens of that nature are to be strictly construed; and where there is ambiguity which raises a doubt as to the legislative intent, that doubt must be resolved in favor of the subject or citizen on whom the burden is sought to be imposed.'"

This is recognized as a general rule. Cooley on Taxation, 453.

Third. The statute must be construed as a part of the taxing legislative system of Ohio, and, if it can reasonably be done, a construction must be put upon it which will harmonize it with that system.

Vane v. Newcombe, 132 U. S. 220, 10 Sup. Ct. 60, 33 L. Ed. 310:

"In cases of doubt or uncertainty, acts in pari materia * * * may be referred to in order to discern the intent of the Legislature in the use of particular terms." United States v. Saunders, 22 Wall. 492, 22 L. Ed. 736; Reiche v. Smythe, 13 Wall. 162, 20 L. Ed. 566.

City of Cincinnati v. Connor, 55 Ohio St. 89, 44 N. E. 582:

"It is an * * * established rule that the provisions of a statute are to be construed in connection with all laws in pari materia, and especially with reference to the system of legislation of which they form a part, and so that all the provisions may, if possible, have operation according to their plain import."

[4] Keeping these rules of construction in mind, let us analyze the act of April 14, 1900 (94 O. L. 162; G. C. §§ 5373 and 5374), and ascertain whether it was intended by the General Assembly of Ohio to apply to a person situated as the plaintiff was in February, 1914.

The first clause of the statute, as we have divided it, in express terms divides the years as of the second Monday of April, instead of the 1st day of January, and the first provision of this clause is that any person "who shall have his actual or habitual place of abode" in the state of Ohio for the larger portion of the 12 months (for more than 6 months of the year) next preceding the second Monday of April *"shall for the purposes of taxation be deemed a resident of this state, and the personal property which he is required by law to list shall be taxable therein."* By the act of April 18, 1913 (103 Ohio Laws, p. 788, § 6), tax listing day was changed from the second Monday of April to the first Monday of February of each year; but since all parties seemingly assent to it, the court will treat section 5373 as if it read "the first Monday of February," instead of the "second Monday of April in each year."

Obviously, considering only this provision of the clause of the act, it does not matter whether the more than six months that any person has "his actual and habitual place of abode" in the state is the first or the last, or any other, six months of the year, he must still under this

provision of the clause, considered alone, be deemed a resident of the state for the purposes of taxation.

But this first clause continues with the provision that such a person shall be deemed a resident of this state *"unless he shall on or before said day have changed his place of abode to a place without this state with the bona fide intention of continuing actually to abide permanently without this state."* The implication from this is clear beyond discussion that the Legislature intended that if a person so residing in Ohio for more than 6 months of the 12 months next preceding the second Monday of April (the first Monday of February) shall on or before said day change his place of abode to a place without the state *with the intention in good faith* (bona fide) of continually abiding permanently without the state, he shall not be liable to taxation within the terms of the act. This provision introduced by "unless" constitutes an obvious exception to the general language preceding it.

If, now, we confine the discussion as to the meaning of the act to these two provisions of this first clause, it seems to be the clear intention of the Legislature that any person may come into the state of Ohio and have his actual or habitual place of abode therein for 6 or even for any greater number of months of the year less than 12, but that, if he shall before tax listing day change "his place of abode to a place without the state" with the intention in good faith to "abide" permanently without the state, he shall not be taxed under the terms of this statute.

Mr. Rockefeller came into the state about the 24th day of June, 1913, and it would be a perversion of the testimony in the case to say that he came with any intention to make this state the place of his permanent abode. He, however, remained in the state a little over 7 months and until after tax listing day of 1914. It seems very certain that if he had gone back to his permanent home in New York before tax listing day, even one day before it, the claim would not, it could not, have been seriously made that under the terms of this statute thus far considered he should pay taxes on other than tangible property actually within the state, for the reason that on the evidence before this court there can be no doubt at all that the plaintiff's bona fide intention all the time while he was in this state was to have his permanent abode or home without the state; that the occasion of his not returning to his permanent home in New York state was the sickness of members of his family, and that when he did leave the state of Ohio it was "with the bona fide intention of continuing actually to abide permanently without this state" of Ohio, and to continue his permanent abode in the state of New York, where it had been for 30 years before.

If he had left Ohio the day before tax listing day, he would not have come within the terms of this first clause of the statute, for the reason that his change of abode to his New York permanent home would have been a change of his place of abode to a place without this state with the bona fide intention of continuing actually to abide permanently without the state and this would have brought him within the second provision of this first clause of the statute, so that he could not have been taxed under the clause at all. With this conclusion very clearly

reached, let us ask: Can it be said that the law is different in Mr. Rockefeller's case because he chanced to be in the state on tax return day, instead of leaving it on the day before that day? Must it be concluded that this provision of the statute means that his mere physical presence in the state of Ohio for more than 6 months of the year made him subject to taxation under this clause regardless of his intention, regardless of whether he intended to make Ohio his home, or whether he was simply visiting in the state, intending to return to the state of his citizenship and permanent residence, if that period included tax listing day, but that he would not be liable to taxation if his stay did not include tax listing day, and if he had removed from the state before that day—even one day before it—with the bona fide intention of going to his permanent abode without the state, or must there be, in addition to his physical presence in the state for more than six months, when this includes tax listing day, an intention in addition on his part to make this state his permanent abode? This is the important question to be decided.

The next two clauses (2 and 3) as we have divided the act, while not directly applicable to the facts of this case, are of great importance in deciding what the answer to this question should be.

The first of these clauses provides that if a person who has made his actual abode in the state of Ohio for the required part of any year shall change his abode to a place without the state before tax listing day, but shall return and again "abide" in the state within six months of the time he left it, this return "shall be prima facie evidence" that he did not, in good faith, intend to make his permanent place of abode without the state when he moved to a place without it. Plainly this clause prescribes a rule of evidence by which courts are to be guided in determining whether or not such a change of residence was made in good faith with the intention of permanently abiding without the state. If, giving due effect to the rule of evidence thus prescribed by the statute, a court concludes that the removal was made in good faith, the implication is imperative that the person shall not be taxed in Ohio. This decision is obviously to be determined by what the conclusion of the court shall be as to the intention, the mental state, of the person at the time of and after his removal, and this is to be determined by all of the evidence introduced, and not wholly by the physical presence of the person in, or by his physical absence from, the state.

But if the court, on all the evidence, shall conclude that the removal to another state was not made in good faith with the intention to permanently abide without the state of Ohio, then the remainder of this second clause as we have divided the act becomes effective, and requires that notwithstanding such removal from the state, and notwithstanding the physical absence from the state of the person and his family and household belongings on the tax listing day, nevertheless, since his removal was not made in good faith, his property shall be listed in Ohio for taxation, and he shall "be deemed to have resided" in the state on tax listing day at the place where his actual place of abode was before his removal.

Thus again by the express terms of this law physical absence from the state, alone, does not determine whether the act shall apply to a given person or not; but his intent, his purpose, with respect to making or not making his abode permanently without the state, is the decisive consideration. This clause is obviously a rule of evidence with an effect to be given to it prescribed by the Legislature.

Since, under the express terms of these three clauses of this law, intention, purpose, is such a determining factor that a person's property may be listed for taxation in Ohio, even though he may be physically absent from the state with his family and belongings on tax listing day, if he otherwise comes within their terms, clearly it is not lightly to be held that the intention, purpose, of a person who may have been in the state the required period of time including tax listing day shall not be taken into consideration in determining whether the act applies to him or not, and that the decision of the question shall depend in such case wholly on the physical presence on that day of such person in the state without regard to his intention to make or not to make it his permanent abode.

It is of much significance in this connection that the act does not declare that the more than six months during which a person must have had "his actual or habitual place of abode" in the state shall include tax listing day, but that, on the contrary, it expressly provides, as we have seen, for listing the property of the man who leaves the state before tax listing day, if his change of abode to a place without the state is not made with the intention in good faith to permanently live without the state. If a man's intention to return to the state can render him taxable when he is without the state on tax listing day, surely the intention of another not to abide permanently in the state—the fact that he certainly was simply visiting in the state—should not be without value in determining whether he should be taxed, even if he happens to be in the state on tax listing day.

It is reserved for the fourth clause of the act, as we have divided it, to clear up any doubt there might otherwise have been as to what the intention of the General Assembly was in the respect which we are discussing. This clause provides that if a person, who shall have his place of abode within the state for the period prescribed by the act, "does not claim or exercise the right to vote at public elections, within this states," this fact "shall not of itself constitute him a nonresident of this state within the meaning of this section."

This is an extremely significant and important provision, because it expressly recognizes that conditions may exist under which a person may abide in the state the required time and nevertheless continue to be a nonresident within the meaning of the act, and it also clearly implies that whether such a person is or is not a nonresident within the meaning of the act is one to be determined by testimony, and it therefore prescribes that, even though a person may renounce his citizenship in the state by not claiming or exercising the right to vote at elections in the state, yet, notwithstanding this, he may still be a resident of the state, and taxed in it, because his real purpose and intention was to make his permanent home in Ohio.

Thus, this clause prescribes, as we have seen that each of the two next preceding clauses prescribes, a rule of evidence for the guidance of courts in deciding whether a person who has actually had his abode within the state for the required period is, or is not, a nonresident, and if he is a nonresident the implication is imperative that he does not come within the scope of the section and should not be taxed.

This third provision, be it noted, is that the failure of a man to vote in the state *"shall not of itself"*—that is, standing alone, unsupported by other facts and circumstances—*"constitute him a nonresident of this state within the meaning of this section."* The implication from this plainly is that this fact, not standing alone, but supported by others, as that he was certainly visiting in the state without any intention of making his home in it, would "constitute him a nonresident of this state within the meaning of this section."

From this third clause of the act these deductions seem to this court to be obvious and imperative: (a) That a man may have his "actual or habitual place of abode" during the greater part of the prescribed 12 months and *still be a nonresident of the state,* and not within the terms of the act; (b) that whether a given person so residing in the state for the prescribed period is a resident of the state and taxable, or a nonresident and therefore not taxable, under the act, is a question of fact, to be determined from the testimony of each case, and of course such determination must be by the courts when properly applied to; and (c) that in determining this question of residence or non-residence the fact that a man renounces his right to vote in a state "shall not of itself constitute him a nonresident," which but for such a provision it probably would be accepted as doing, so averse are the courts to believe that to avoid taxation men will forego their right to participate in their own government.

The remaining provision of the section—the fourth clause, section 5374—reads:

"Nothing herein contained shall relieve any person or property, who or which, but for this act, would be subject to taxation within this state; and no provision of this act shall be construed to repeal any statute now in force as to the taxation of personal property."

This, when read with the title of the act we are considering, viz., "An act to supplement section No. 2735 of the Revised Statutes of Ohio relating to the taxation of personal property," makes it clear that the legislative purpose was that this law shall be an integral part of the taxing system of Ohio, and therefore under the third rule of construction prescribed by the Supreme Courts of the United States and of Ohio in the authorities we have cited, such a construction should be given to it, if the language will reasonably permit of it, as will make it harmonize in principle and purpose with that system and body of law of which it is a part.

In Worthington v. Sebastian, Treasurer, 25 Ohio St. 1, the Supreme Court of Ohio declared that the system of Ohio law—

"has uniformly proceeded upon the theory that *tangible property* is to be taxed according to the law of the place where it is situated, irrespective of the residence of its owner; while, with equal uniformity, it has proceeded upon the theory that 'credits,' 'investments in bonds,' 'stocks,' etc. (intangible

property), are taxable according to the laws of the place where the owners or holders reside."

And in Grant v. Jones, 39 Ohio St. 506, it is said that:

"Credits owned by a nonresident of this state are not taxable here, unless they are held within this state by a guardian, trustee, or agent of the owner by whom they must be returned for taxation."

These are but statements of what the policy of the taxation laws of Ohio has been, certainly since the adoption of the Constitution of 1851, and that it was the policy of such laws in 1913 and 1914 is sufficiently clear from the provisions of General Code, §§ 5328, 5321, 5323, and 5371. To declare that the plaintiff is taxable as the defendant contends he is upon his intangible property, property which was never in Ohio, and which was subject to taxation in the state of New York, when he was clearly a nonresident of Ohio within the meaning of that term as it is used generally in the Ohio statutes (Grant v. Jones, 39 Ohio St. 506), would be to put upon the act we are considering a construction which would make it wholly out of harmony with this long-settled policy of the taxation laws of the state.

Under the decisions of the Supreme Court of the United States and of the Supreme Court of Ohio, which we have cited, such a construction should be put upon the act only if made necessary by its express terms, and since the construction at which we have arrived as the proper one of the preceding three clauses of the statute does not require this, we are but following the highest authority in concluding that this act of April 14, 1900 (G. C. §§ 5373 and 5374), did not introduce a new departure into the taxing system of Ohio by attempting to tax nonresidents of the state on their intangible property, but that it simply furnished new rules of evidence which courts must apply in determining who are and who are not residents of the state for purposes of taxation.

This discussion of the provisions of the act of April 14, 1900, reading them all together, and resolving doubts in favor of the citizen, as we must do under the rules and authorities cited, makes it very clear to this court that the legislative purpose in enacting it was not to tax nonresidents of the state who might by chance remain within it more than 6 months, but was to provide certain definite rules of evidence by which the courts are to be guided in deciding whether or not a person is a resident of Ohio for taxing purposes. These rules thus prescribed are:

(1) That if a man shall make his actual place of abode within the state for more than 6 months of any year, as the year is divided by the act for taxing purposes, this fact, unexplained and unrebutted, shall render him a resident of the state, so that he may be taxed as a citizen is taxed; but such residence may be explained and shown by evidence to have been temporary in its character, without any intention on the part of the person to make Ohio his permanent abode or residence, and, when this is proved, he shall not be subject to such taxation.

(2) That if, after such a person shall have resided in the state the required period, he shall remove from the state before tax listing day, with the purpose, in good faith, to establish his permanent home

elsewhere, then he shall not be taxed under its terms. Whether such removal from the state was with the bona fide intention of permanently abiding without it is plainly a question of fact to be determined by a court upon the evidence that may be adduced bearing upon the question.

(3) But if the person so removing from the state shall return to it within 6 months of such removal, this return is made by the statute "prima facie evidence" to be considered by a court that he did not intend when he left the state to permanently have his place of abode without the state, and he shall be taxed as if he had remained in the state until the tax listing day.

(4) The fact that such a person may renounce his right to vote in the state, while evidence of his nonresidence, shall not be conclusive of his really being a nonresident, as it might be if the statute had not been enacted.

Thus plainly the statute contemplates that a man may have his place of abode within Ohio for the required 6 months, and yet be a nonresident of the state all the time within the meaning of the tax laws of Ohio, and so not taxable in the state on his intangible property, and whether he is such a nonresident or not is for the courts to determine upon the evidence introduced in each case. In the case under consideration, it is admitted that Mr. Rockefeller, all of the time he was in Ohio in the years 1913 and 1914, was a citizen of the state of New York; that he was a voter of that state; that he was taxed there, presumably upon this very property; that he had his permanent home there; and it cannot be doubted on the testimony introduced on this trial that he came to Ohio in June, 1913, as he had often done before, simply for a summer visit, which was continued longer than usual because of the illness of members of his family. Neither can it be doubted that when he left the state he left it with the purpose of permanently residing in the state of New York, which had been his home for more than 30 years.

With these facts before us, in the opinion of this court, there can be no doubt at all that, notwithstanding the provisions of the act of April 14, 1900, Mr. Rockefeller was a nonresident of Ohio when the tax return in dispute was made, and that he could not properly be taxed upon his intangible property under the terms of that statute.

[5] With respect to the two automobiles, returned, valued at $8,000, the case is entirely different. These were tangible personal property, which were in the state of Ohio for 7 months prior to and upon tax listing day and are clearly to be distinguished from moneys, credits, bonds, and stocks, etc., included in the other item of the return, which were not within the state, and which retained the situs of the nonresident owner in New York. That this tangible personal property was properly taxable as returned seems clear enough, under authority of G. C. §§ 5328 and 5325; Pullman's Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; Coe v. Errol, 116 U. S. 517, 6 Sup. Ct 475, 29 L. Ed. 715; Old Dominion Steamship Co. v. Virginia, 198 U. S. 299, 25 Sup. Ct. 686, 49 L. Ed. 1059, 3 Ann. Cas. 1100; Gromer v. Standard Dredging Co., 224 U. S. 362, 32 Sup. Ct. 499, 56 L. Ed. 801.

In the construction of statutes, the history of the times, "the environment" of the lawmakers, may always be looked to (Standard Oil Co. v. United States, 221 U. S. 1, 31 Sup. Ct. 502, 55 L. Ed. 619, 34 L. R. A. [N. S.] 834, Ann. Cas. 1912D, 734), for the purpose of ascertaining the legislative purpose, and such reference is convincingly confirmatory of the conclusions which we have reached from the language of the statute under consideration.

There can be no doubt that it was generally understood among lawyers in full practice at the time the law of April 14, 1900, was enacted that the purpose of it was not to tax nonresidents who might be temporarily within the state, but that its purpose was to prevent the escape from taxation of persons who really lived and did business in the state, but who in order to avoid taxation in Ohio pretended to maintain a residence elsewhere, usually in New York or Washington. These men spent a large part of their time in Ohio, but were careful to be out of the state on tax listing day. Some of them rented rooms in hotels, and others rented apartments which they claimed as their residences; and as constituting, as they hoped, a final proof, so that the courts would not hold them to be citizens of Ohio and subject to taxation, such men usually gave up voting in the state. Some of them voted elsewhere and some did not.

If we keep in mind such cases as these we have described, we shall see that the various provisions of the act of April 14, 1900, "read onto" them perfectly and sensibly.

Such a person, after living in the state of Ohio more than 6 months of each year as prescribed in the act, invariably left the state before tax listing day, but returned again to his business and to what was his real home within a short time after. His business and home being really in the state, such removal was a sham, the effect of which this statute sought to defeat by declaring that such return within 6 months should be "prima facie evidence" that the removal was not made in good faith, with the purpose to reside permanently without the state, and that therefore the "tax dodger" should be taxed as if he had been in the state upon tax listing day.

The greatest emphasis of all was laid by such men, and also by the courts, as proof that they were nonresidents, upon the fact that they had renounced the right to vote in Ohio, and therefore the act declared that such failure to claim the right to vote in the state should not of itself constitute or prove the man a nonresident, but it plainly left the door open for other proof of nonresidence. Thus it will be seen that the act applied perfectly to the conduct of such men, and served to make it necessary for them to choose between having a bona fide residence outside of Ohio and paying taxes within it.

We have seen that the terms of the statute do not apply to Mr. Rockefeller's case, and obviously this is because it was not intended by the lawmakers to cover such a case of genuine bona fide nonresidence as his certainly is, but because it was intended to circumvent the frequently practiced, fraudulent devices of men living and doing business in Ohio to escape paying their just share of the expenses of the government which protected their lives and property.

The conclusion thus arrived at renders unnecessary the consideration of the question as to the constitutionality of the law under discussion, which was elaborately and learnedly argued.

This court is quite aware that such a decision as is here rendered will be the subject of criticism, but a judiciary which has not independence sufficient to protect the rights of rich men, when they are believed to be unjustly assailed cannot be trusted to justly protect either the personal or property rights of the well-to-do or poor.

A decree will be entered allowing an injunction against the collection of the tax assessed upon the intangible personal property of the plaintiff as returned by the deputy state tax commissioners, in conformity with the conclusions of this opinion.