In re WISE.
In re KEMNITZ.

(1944-1945 Income Taxes).

Nos. 33269, 33270. May 3, 1949.
Rehearing Denied May 24, 1949.

*206 P. 2d 218.*

Howell & Stinchecum, of Oklahoma City, for plaintiffs in error.

C. W. King and R. F Barry, both of Oklahoma City, for defendants in error.

HALLEY, J. W. W. Wise and O. A. Kemnitz had been copartners, doing business as the K-W Drilling Company, and on February 28, 1944, owned one motor rotary oil well drilling rig and certain equipment for drilling test wells for oil and gas, and had, prior to that date, been actively so engaged for hire in Oklahoma. Mr. Kemnitz owned an interest in other similar equipment, but Mr. Wise owned no interest in such equipment, other than that mentioned, from February 28, 1944, to January, 1945.

On February 28, 1944, the above parties, under the name of K-W Drilling Company, entered into a written contract with Kerlyn Oil Company, a corporation, for the use of the drilling rig owned by Kemnitz and Wise, and then located in Oklahoma. The principal terms of the lease or rental agreement were that Kerlyn was to have immediate possession of the rig and the right to transport it to Montana for drilling operations, at its own expense, and to return the rig to Oklahoma as its expense when drilling was completed, or sooner, upon written demand by the lessors if not used within 15 days after being moved to a drilling location; provided, that costs of transportation to and from Montana did not exceed $20,000, chargeable as drilling costs and to be credited to Kerlyn in computing the net costs of drilling the first nine wells drilled; Kerlyn to pay lessors $100 per day for each day the rig was used in actual drilling operations, and the same amount for shutdown time; Kerlyn to divide equally with Kemnitz and Wise the net profits, if any, on each well drilled. Such payment was to be made at the completion of each well drilled resulting in a net profit. Kemnitz and Wise were given the right to designate the tool pusher for the operation of the rig, and such party was to be an employee of Kerlyn, paid by Kerlyn, and Kerlyn was otherwise to have complete control of the rig, its movements, use, and operations, all to be done in the name of Kerlyn.

The contract further provided that Kerlyn was to furnish all necessary supplies for drilling operations, except such equipment as was described in the written contract between the parties, to be furnished by Kemnitz and Wise. Kerlyn was to keep the property in repair. The contract expressly provided that it should not be construed as constituting a partnership, but a joint venture.

W. W. Wise was designated as tool pusher, and Kerlyn agreed to pay him $400 per month for his services. Kerlyn moved the rig to Montana in March, 1944, and drilling operations were car-

ried on, with W. W. Wise acting as tool pusher.

In January, 1945, a fishing job was encountered, and with the permission of the drilling superintendent, Mr. Wise called Mr. Kemnitz to Montana to assist in an effort to clean out the hole. After Mr. Kemnitz arrived, at his own expense, and undertook to assist on the fishing job, the rig caught fire and Mr. Kemnitz was killed. By agreement, the written contract with Kerlyn was terminated. Mr. Wise remained in Montana for some time, repairing the burned rig, and for some time undertook to secure further drilling contracts, and finally moved the rig to Wyoming, where some work was done; and in January, 1946, the rig was torn down and moved back to Oklahoma by Mr. Wise at his own expense.

The additional assessments by the Oklahoma Tax Commission for 1944 and 1945 cover income as rental of, or profits from, the drilling rig operations during the time that it was operated in Montana. The assessments made were paid under protest, and this appeal is from the consolidated order overruling the separate protests of Mr. Wise and Mrs. Kemnitz as administratrix.

The sole question involved in this appeal is whether the rental income and profits received by Mr. Kemnitz and Mr. Wise from Kerlyn Oil Company while operating a drilling rig outside the State of Oklahoma is taxable as Oklahoma income under the Oklahoma Income Tax Act.

There is no dispute as to the facts, since the parties agreed as to the amount of income and tax due thereon by each protestant, if it should be held that such income is taxable by the State of Oklahoma.

The plaintiffs in error have stated their contentions under three separate propositions, which are as follows:

"Proposition I. The rotary drilling rig in question had situs in Montana in 1944 and 1945, and the rental income therefrom is non-taxable under the provisions of the Oklahoma Income Tax Act."

"Proposition II. The rental income received by W. W. Wise is not taxable by Oklahoma because he was a nonresident during period income was received."

"Proposition III. The commission committed reversible error in admitting incompetent, irrelevant and immaterial evidence of a highly prejudicial nature."

It is first claimed by plaintiffs in error that the Oklahoma Income Tax Act does not tax either a resident or a nonresident of Oklahoma on rental income derived from tangible personal property having a situs in some other state. Title 68 O.S. 1941 §876 defines gross income subject to income tax, and the Income Tax Act also sets out certain items which are allocable or exempt from taxation under this Act. The applicable exemption subsection of section 878 is (e) (1), and is as follows:

"Income from real and tangible personal property, such as rents, oil and mining production or royalties, and gains or losses from sales of such property, shall be allocated in accordance with the situs of such property."

It will be noted that the Oklahoma Income Tax Act does not define the word "situs". It has been defined by numerous courts and text writers with respect to taxation, both ad valorem and income. We have been unable to find an Oklahoma case precisely in point. There have been several decisions construing certain sections which exempt the income from certain property from taxation by the State of Oklahoma.

There can be no question but that a drilling rig is tangible personal property. The drilling rig in question, and from the leasing of which the income sought to be taxed arose, was in the State of Montana from March 20, 1944, until it was damaged beyond immediate use by a fire on January 28, 1945, and was returned to Oklahoma in Jan-

uary 1946. It is not contended by plaintiffs in error that the State of Oklahoma is prohibited by its Constitution, or that it lacks the power to tax a resident of Oklahoma on the income sought to be taxed in this case. It is simply contended that the Oklahoma Legislature has clearly provided that it will not tax rental income from tangible personal property having a situs outside the State of Oklahoma.

Since the term "situs" is not defined in our Income Tax Law, it should be given its ordinary meaning. It is generally held to mean "location, site, situation, the place where a thing is." City of Dallas v. Gulf C. & S. F. Ry. Co. (Tex. Civ. App.) 1 S.W. 2d 497.

In 51 Am. Jur. §452, it is pointed out, in regard to tangible personal property, that it is now recognized that the principle of "mobilia sequuntur personam" is not generally recognized as applicable to tangible personal property.

"It has become universally recognized that tangible personal property may be taxed in the state where it has an actual situs—where it is physically located—although the owner resides in another jurisdiction. The modern rule is that the actual situs of visible, tangible personal property, and not the domicile of its owner, determines the place of taxation. For purposes of taxation, rights in tangibles are regarded as localized at the place where the tangible itself is located." Citing Curry v. McCanless, 307 U.S. 357, 83 L. Ed. 1339, 59 S.Ct. 900, 123 A.L.R. 162. It is further stated that:

"This is upon the basis of the sound theory that inasmuch as the property enjoys the protection of the state where it is located, it should be made to contribute to the expenses incident to its protection in the state, in common with all other property within the jurisdiction. . . . "

The drilling rig of plaintiffs in error was leased for use in Montana, and was actually in operation there for more than 10 months, and remained in that state while being repaired and wait-

ing for other drilling contracts for an additional 16 months. It was out of the State of Oklahoma for some 26 months.

In vol. 2, Cooley on Taxation (4th Ed.) sec. 451, it is stated:

" . . . The situs of tangible personal property, for purposes of taxation, may be where the owner is domiciled but is not necessarily so. Unlike intangible personal property, it may acquire a taxable situs in the state other than the one where the owner is domiciled, merely because it is located there. Its taxable situs is where it is more or less permanently located, regardless of the domicile of the owner. . . . "

In section 452, Cooley undertakes to define what is meant by "more or less permanently located", and says:

" . . . where personal property comes into a state to be kept there or used there for a considerable period of time but with no intention, perhaps, of keeping it there permanently, . . . "

it may be said to be more or less permanently located in that state, and that "it means a more or less permanent location for the time being."

The plaintiffs in error cite the case of City Bank Farmers' Trust Co. v. Schnader, 8 Fed. Supp. 815, affirmed on appeal in 293 U.S. 112, 55 S.Ct. 29, 79 L.Ed. 228, wherein it is stated:

" . . . Actual situs means a little more than simply the place where the property is. . . . "

The court further stated, in that case:

" . . . It does not, however, demand or necessarily involve any idea of permanency or a permanent location in the taxing state. . . . In the true sense, permanency of location can never be predicated of personal property. . . . To attempt to identify actual situs with permanent location as applied to personal property is only productive of confusion of thought."

There is also cited the case of Rockefeller v. O'Brien, 224 Fed. 541, affirmed in 239 Fed. 127, and certiorari denied,

244 U.S. 650, 37 S.Ct. 743, 61 L.Ed. 1371, wherein the State of Ohio assessed a tax against John D. Rockefeller, a bona fide resident of the State of New York, having a summer home in Cleveland, Ohio. He came to his Ohio residence in June, 1913, for the purpose of spending the summer, and brought with him his family, servants, and two automobiles. He had planned to return to New York in October, but due to illness in his family remained in Ohio until February, 1914. The Ohio law provided that anyone having his actual or habitual place of abode within that state for more than six months preceding assessment date should be deemed a resident and taxed on all his personal property. The Ohio authorities proceeded to assess Rockefeller on his two automobiles, valued at $8,000, and on his intangible personal property, valued at $311,040,337. The taxing authorities of Ohio were enjoined from this assessment, except as to the two automobiles, on the ground that the cars were tangible personal property and actually located in Ohio seven months prior to and upon tax listing day, but held that the intangible personal property was not taxable in the State of Ohio.

The case of City of Dallas v. Gulf, C. & S. F. Ry. Co., supra, involved an effort on the part of the city of Dallas, Tex., to tax some switch engines owned by the railroad and used in its yards in that city. The court said, in its eighth syllabus:

"Permanency of location is not required to fix situs for purposes of taxation; word 'situs' meaning site, situation, location, or place where a thing is.

"For purposes of taxation, situs of personal property depends upon character of use to which such property is put.

"That switch engines in city on January 1st might not remain permanently in city of Dallas, but might be transferred to some other switch yard of railway company, could not operate to relieve them of their proper share of municipal taxation."

This case was reversed on appeal, but solely on the ground that under the Dallas city charter and the Texas Constitution, the city was not authorized to assess railroad rolling stock.

The case of Woods v. Oklahoma Tax Commission, 196 Okla. 94, 162 P. 2d 875, involved the taxation of income arising from the rental of certain motor vehicles owned by a resident of Oklahoma. The cars were delivered in Oklahoma and returned to Oklahoma, but while rented were used mostly outside the state. It was claimed that any rental realized from the use of these vehicles while being operated in other states was exempt under the provision of our Income Tax Law quoted above. This court used the following language in sustaining the Oklahoma Tax Commission in its assessment of such income:

"It is our opinion, and we hold, that, under the record before us, the 'situs' of the property was in Oklahoma, as that term is used in sec. 878(e) (1) above."

The above case was tried upon a stipulation, and the court stated that there was "nothing in the agreed statement of facts indicating that the property in question acquired an actual situs in any other state under said formula . . .", referring to the formula provided for allocating income where property is used partly in one state and partly in another, as provided in section 878(g) (3), 68 O.S. 1941. The court further said:

"The stipulation is silent as to the circumstances under which the equipment was used in other states, whether it was operated over fixed routes or habitually in other states, or whether it was sent out only occasionally and at irregular intervals into other States."

The facts involved in the Woods case are so different from the facts under consideration that we do not consider the ruling of the court applicable to the instant case. If it had been shown in the Woods case that some of the motor vehicles were used over fixed routes in the State of Kansas, and re-

mained there for long periods of time, were repaired in that state and replacements provided and furnished there, the court would have been justified in finding that they had acquired a more or less permanent situs outside the State of Oklahoma. The court then would have held that the applicable formulae provided in the Oklahoma Income Tax Law for allocating income arising from the use of mobile equipment partly in one state and partly in another, should have been applied to such income. This decision is not controlling under the facts now before us. Clearly the income in question was not taxable in Oklahoma.

Since this case is being reversed on the one question that the income was earned in Montana and was not taxable in Oklahoma, it is unnecessary to decide the other two questions raised by plaintiffs in error.

The order of the Oklahoma Tax Commission denying the protest of plaintiffs in error and making additional assessments, as above set out, is hereby reversed, and the commission is instructed to enter an order to refund taxes paid by plaintiffs in error.

WELCH, CORN, LUTTRELL, JOHNSON, and O'NEAL, JJ., concur. DAVISON, C.J., ARNOLD, V.C.J., and GIBSON, J., dissent.