

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN, TEXAS 78711

WAGGONER CARR
ATTORNEY GENERAL

May 30, 1963

Mr. Robert S. Calvert
Comptroller of Public Accounts
Austin, Texas

Dear Mr. Calvert:

Opinion No. C- 86

Re: Whether 100% of the ren-
tal receipts received by
a corporation, for the
leasing of equipment, is
"business done in Texas"
regardless of where they
are used, for purposes
of the allocation for-
mula in Article 12.02,
V.C.S.

You ask whether all of the rentals received from the
leasing of trucks, automobiles, tow boats and barges regardless
of where they are in fact used and receipts from the operation
by the owners of tow boats and barges is "business done within
Texas" for purposes of computing the franchise tax pursuant to
the formula in Article 12.02, Vernon's Civil Statutes, Taxation-
General.

To quote from your statement of facts:

1) ". . . the principal business activity
of the corporation . . . is leasing auto-
mobiles and trucks. The corporation leases
its equipment on a monthly rental basis
plus a fixed charge per mile. The auto-
mobiles and trucks are used in this state
as well as in other states under the same
lease contract. The leasing corporation
does not appear to require that the equip-
ment be used in any particular state. The
corporation has its principal place of
business in Houston and apparently the
lease contracts are executed in Houston."

2) ". . . principal business activity is
'operation and leasing of tow boats and
barges.' . . . the corporation deter-
mines its gross receipts from business
'done in Texas' by determining the number
of 'log days in Texas for barges rented

-417-

> to others under bareboat charters.'  The
> corporation includes its receipts for the
> days logged outside the State of Texas as
> business done outside Texas.  The charters
> were executed in Texas and the barges were
> delivered to the lessees in Texas.  . . .
> The assessment of ad valorem tax on the
> tow boats and barges is made in Harris
> County, Texas."

The applicable statutory provision is:

Article 12.02 -

> "Each corporation liable for payment
> of a franchise tax shall determine the
> portion of its entire taxable capital
> taxable by the State of Texas by multi-
> plying same by an allocation percentage
> which shall be the percentage relation-
> ship which the gross receipts from its
> business done in Texas bear to the total
> gross receipts of the corporation from
> its entire business.
>
> "For the purpose of this Article, the
> term 'gross receipts from its business
> done in Texas' shall include:
>
> "(a) Sales of tangible personal pro-
> perty located within Texas at the time
> of the receipt of or appropriation to
> the orders where shipment is made to
> points within this State;
>
> "(b) Services performed within Texas;
>
> "(c) Rentals from property situated,
> and royalties from the use of patents or
> copyrights, within Texas; and
>
> "(d) All other business receipts within
> Texas."

The original allocation formula in Texas (Texas Session
Laws, 1917, 35th Leg., p. 168, Ch. 84) was passed to remedy the
unconstitutionality of an unapportioned franchise tax on all of
the capital stock of corporations which did most of their busi-
ness outside of this state.  See Looney v. Crane Co., 245 U.S.
178 (1917).  The validity of the predecessor to the present

statute was announced in Ford Motor Co. v. Beauchamp, 308 U.S. 331 (1939). See generally, Texas Legislative Council, Staff Research Report, A Survey of Taxation in Texas, Part IIB, pp. 209-68 (1952).

No case involving a rental situation has been found under the Texas franchise tax statute. The United States Supreme Court has distinguished between using property in interstate commerce and furnishing labor or capital to another who may operate outside of the taxpayer-lessor's state, the former being "interstate" and the latter "intrastate". Puget Sound Stevedoring Co. v. State Tax Comm'r., 302 U.S. 90 (1937) (supplying longshoremen without directing or controlling the work); Williams v. Fears, 179 U.S. 270 (1900) (hiring laborers in Georgia for employment outside that taxing state). Accord, Superior Oil Co. v. Miss., 280 U.S. 390 (1930) (sale with "indifferent knowledge" of extra-state use).

It has been held that the numerator of a similar allocation formula was "intrastate" business. E.g. Pacific Express Co. v. Seibert, 142 U.S. 339 (1892). In a case involving a sale the Texas court said that "business done in Texas" meant "business begun and completed in Texas, and not business begun in Texas and completed in some other state or foreign nation, or vice versa. In other words, that it means intrastate business." Clark v. Atlantic Pipe Line Co., 134 S.W.2d 322, 328 (Tex.Civ.App. 1939, error ref.). As stated in an Attorney General's Opinion, it is "business originating in and consummated in the State of Texas and that business originating in the State but consummated outside the State would not be construed as business done in Texas." Attorney General Letter Opinion, Book 368, P. 804 (1935). See Flowers v. Pan American Refining Corp., 154 S.W.2d 982 (Tex.Civ.App. 1941, error ref.); Attorney General Opinion No. R-936 (1947); Attorney General Opinion No. WW-1503 (1962). But see Ramsey v. Investors Diversified Services, Inc., 248 S.W.2d 263 (Tex.Civ.App. 1952, error ref. n.r.e.) (facts of each case control).

The facts reveal no action by the lessors outside of Texas. It appears that the lease contract was "begun and consummated" wholly within Texas. There is no evidence of an agency relation by which the lessee's operations outside of Texas could be attributed to these lessors.

The 1959 revision of the franchise tax statute introduced the first legislative definition of "business done within Texas," which, it has been said, was not intended to change the scope of the prior formula. Texas Research League, The Allocation Formula of the Texas Franchise Tax, p. 6 (1960). However, none of the prior authorities dealt with a "rental" situation

which is now treated distinctly in section (c) of the statute. A separate section (a) applies to "sales".

To answer this request it is necessary, therefore, to analyze the "ordinary signification" of the words with regard to the context in which they are used. Art. 10, section 1, V.C.S.

Vernon's Civil Statutes, Article 23 defines terms used throughout the statutes: "The following meaning shall be given to each of the following words, unless a different meaning is apparent from the context: 1. 'Property' includes real and personal property, and life insurance policies, and the effects thereof." Because no contrary meaning appears, the equipment here is "property" as used in the Franchise Tax Act.

The word "situated" has been construed to refer to rules governing taxable "situs". E.g. Great Southern Life Insurance Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778 (1922); City of Fort Worth v. Southland Greyhound Lines, Inc., 67 S.W.2d 354 (Tex.Civ.App. 1931), aff'd. 123 Tex. 13, 67 S.W.2d 361 (Com.App. 1933).

The general rule for establishing the situs of tangible personal property is stated in the maxim "mobilia sequuntur personam"; personal property is domiciled where the owner is. 51 Am.Jur. Taxation #448-62 (1944). Chemical Express v. City of Roscoe, 310 S.W.2d 694 (Tex.Civ.App. 1958, error ref.). The corporations here appear to have their charter and principal business offices in Texas, which factors fix one's taxable situs. Northwest Airlines, Inc. v. Minn., 322 U.S. 292 (1944); Chemical Express v. City of Roscoe, supra.

Property "permanently" located in another state constitutes the primary exception to the general rule. "Permanence" may be evidenced by continuous location, business situs or by sufficient average presence in another state to establish situs in such other state. Northwest Airlines, Inc. v. Minn., supra; State v. Crown Central Petroleum Co., 242 S.W.2d 457 (Tex.Civ.App. 1951, error ref.). See City of Dallas v. Overton, 363 S.W.2d 821 (Tex.Civ.App. 1962, error ref. n.r.e.); Attorney General Opinion No. V-373 (1947). Neither ground for the exception appears from the facts presented. The lessor has the burden of proof "to show that the property was not taxable in this state." North American Dredging Co. of Nevada v. State, 201 S.W. 1065, 1067 (Tex.Civ.App. 1918).

One additional factor pointing to this result is the word "use" to designate which patents and copyrights generate

royalties constituting "business done within Texas". The careful statutory distinction between the terms "use" and "situated" in section (c) suggests the interpretation developed above.

Such a "situs test" for intrastate business is consistent with the goal of exclusivity sought by the federal constitutional cases which require allocation formulae in state taxation. Standard Oil Co. v. Peck, 342 U.S. 382 (1952).

Other jurisdictions have reached similar results in analogous cases. Union Tank Line Co. v. Day, 143 La. 771, 79 So. 334 (1918); Woods v. Oklahoma Tax Comm'n., 196 Okla. 94, 162 P.2d 875 (1945), distinguished in In re Wise, 201 Okla. 395, 206 P.2d 218 (1949); People v. Sohmer, 217 N.Y. 443, 112 N.E. 181 (1916). Compare Commonwealth v. American Bell Telephone Co., 129 Pa. 217, 18 Atl. 122 (1889) with Commonwealth v. National Cash Register Co., 271 Pa. 406, 117 Atl. 439 (1921). See also State v. American Refrigerator Transit Co., 151 Ark. 581, 237 S.W. 78 (1922). But see City of Cincinnati v. Commonwealth, 292 Kan. 597, 167 S.W.2d 709 (1943).

The facts do not show that these lessors performed any services with respect to the rental equipment outside of Texas.

Therefore, all rental revenue (monthly rental and fixed charges per mile) derived from the automobiles, trucks, tow boats and barges is "gross receipts from business done within Texas", regardless of where the lessee may use the property.

The operation of tow boats and barges by the owners outside of Texas does not produce "gross receipts from business done in Texas". Clark v. Atlantic Pipe Line Co., 134 S.W.2d 322 (Tex.Civ.App. 1939, error ref.).


## SUMMARY

All rental revenue (monthly rental and fixed charges per mile) from property situated in Texas, is gross receipts from business done in Texas regardless of where the lessee uses the leased property.

The operation of tow boats and barges by the owners outside the state does not yield gross receipts from business done in Texas.

Yours truly,

WAGGONER CARR
Attorney General of Texas

By: R Gordon Appleman
R Gordon Appleman
Assistant Attorney General

RGA:pw

APPROVED:

OPINION COMMITTEE
W. V. Geppert, Chairman
Marietta Payne
Dudley McCalla
J. S. Bracewell
Joseph Trimble

APPROVED FOR THE ATTORNEY GENERAL
By: Stanton Stone