| 94 | 105 |
| 135 | 478 |
| 94 | 105 |
| 196 | ¹625 |

ALEXANDER H. IRVIN

*v.*

THE NEW ORLEANS, ST. LOUIS AND CHICAGO RAILROAD CO.

1. TAXES—*collection, when enjoined.*    Where a party, not the owner or lessee of property, having no taxable interest therein, but who is merely in joint use of the same with the owner for a compensation, is taxed for one-half of its

value, the tax will be illegal and levied without warrant of law, and a court of equity will enjoin its collection.

2. SAME—*when personal property liable to, in this State.* The first clause of the first section of the Revenue law which provides that all real and personal property in this State shall be assessed and taxed, does not contemplate the assessment of personal property that is merely passing through or is in the State for a temporary purpose only.

3. While the *situs* of personal property, is, under many circumstances, considered by the law as being that of its owner, such is not the uniform rule. Where the property is permanently located at a particular place, it is subject to taxation there whether such place is the domicil of the owner or not.

4. SAME—*place where boat is subject to taxation.* A boat is subject to taxation at the place of its registration and where it lies up when not in use—in other words, at its home port; and this without regard to the place where its owners may reside.

5. Where a transfer boat, registered at Cairo, in this State, and owned, one-half by a corporation in this State and the other half by a corporation of another State, was used for the transfer of the cars, etc., of both corporations from Cairo to the Kentucky shore and back, and when not in actual use was laid up in Cairo, where the hands operating the same resided, and where the companies assessed had a business office, it was *held* that the interest of each of the corporations was subject to taxation in Cairo.

6. SAME—*party paying for joint use of another's property, not liable.* Where one railroad company builds a car hoist and lays a third rail upon its own ground, and at its own expense, which is attached to and becomes a part of the soil, another railroad company using the same jointly with the owner, for which it pays a compensation, can not be taxed for one-half its value.

WRIT OF ERROR to the Appellate Court of the Fourth District; the Hon. TAZEWELL B. TANNER, presiding Justice, and Hon. JAMES C. ALLEN and Hon. GEORGE W. WALL, Justices.

Messrs. LINEGAR & LANSDEN, for the plaintiff in error:

A vessel is taxable at its situs which is her home port, and we ascertain what her home port is by finding at what port the vessel is enrolled or registered, the residence of her owner or owners, the places where she lies up, the residence of her officers. Citing sec. 4141, Rev. Stat. of the United States, and sec. 4178; *St. Louis* v. *Ferry Co.* 11 Wall. 423; *Morgan* v. *Parham*, 16 id. 471; *Wiley* v. *City of Pekin*, 19 Ill. 160;

*City of New Albany* v. *Meekin,* 3 Ind. 481; Burroughs on Taxation, sec. 46.

As to the taxation of personal property situate in a district, town, county or State other than that in which the owner resides, we cite the following authorities : *Mills* v. *Thornton,* 26 Ill. 300; *Board of Supervisors* v. *Davenport,* 40 id. 197–209; *Dunleith* v. *Reynolds,* 53 id. 45; *First National Bank* v. *Smith,* 65 id. 44–54; *Hoyt* v. *Comrs. of Taxes,* 23 N. Y. 224; *The People* v. *Commissioners of Taxes,* 35 id. 423–440; *St. Louis* v. *Ferry Company,* 40 Mo. 580; *Alvany* v. *Powell,* 2 Jones Eq. (N. C.) 51.

As to enjoining the collection of taxes, see *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561–596; *Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 id. 591.

Messrs. GREEN & GILBERT, for the defendant in error:

Owners of steamboats are tenants in common, each owning a distinct though undivided interest; the admissions of one do not bind the other, and the undivided interest of each is a proper subject of assessment and taxation against each. Story on Partnership, secs. 417, 453; Conklin on Admiralty, vol. 1, ch. 10, p. 318; Cooley on Taxation, ch. 12, p. 272; *Peabody* v. *County Commissioners,* 10 Gray, 97; *Fairbanks* v. *Kittredge,* 24 Vt. 19.

A corporation actually and permanently resides within the State by whose law it is created. *Ins. Co.* v. *Francis,* 11 Wall. 216; *St. Louis* v. *Ferry Co.* 11 id. 431; *Hoyt* v. *Comrs. of Taxes,* 23 N. Y. 224; *Mineral Point Railroad Co.* v. *Keep,* 22 Ill. 18.

To constitute an actual *situs* in this State the property must so abide in the jurisdiction as to become *incorporated with and form a part of* its personal property. 11 Wall. *supra,* and 16 id. 476.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

In the year 1874 a tax was levied amounting to $1155 by the authorities of Alexander county, upon property claimed to belong to the Mississippi Central Railroad Company. Of this tax $693 was levied on one-half interest of that company in the transfer steamboat "H. S. McComb;" $559.69 was assessed upon a superstructure for hoisting cars, sometimes called a "car-hoist," and a third rail laid on the track of the Illinois Central Railroad Company's track in the city of Cairo, and $2.31 was assessed on office furniture of the first named company.

On the 3d day of July, 1874, the Mississippi Central Railroad Company and the New Orleans, Jackson and Great Northern Railroad Company were consolidated, and assumed the name of the New Orleans, St. Louis and Chicago Railroad Company. That company on the 8th day of February, 1875, filed a bill to enjoin the collection of all of this tax but the $2.31 levied on the office furniture, which was tendered to the collector before the suit was brought.

The terminus of the Mississippi Central Railroad Company was at Filmore, on the bank of the Ohio river, in Kentucky, opposite to the city of Cairo. The Illinois Central Railroad Company had its terminus in Cairo, at the bank of the river. Each road had an incline on its side of the river, from which cars were run upon the steamer H. S. McComb, and by it they were carried to the incline on the opposite bank, to go north or south over one or the other road as occasion might require. The steamer was so engaged in May, 1874, when assessed for taxation. It was built for that business, and was then owned by the Illinois Central and the Mississippi Central railroads, each having one-half interest in the vessel.

The tax of $693 was levied on the half of the vessel owned by the Mississippi Central Railroad Company for the year 1874. It is, by plaintiff in error, claimed that this one-half

is liable and subject to taxation in this State, whilst on the other side it is claimed that it was not liable or subject to any tax whatever in this State, and not being subject to pay a tax, that equity has jurisdiction to restrain and should enjoin its payment.

If the proposition be true that this property is so situated that it was not subject to be assessed for taxation under our revenue laws, then a court of equity may afford relief. The first clause of the first section of that law provides that all real and personal property in this State shall be assessed and taxed. The only question then is, was this property in this State, within the meaning of this section, when it was assessed for taxation? This provision of the law does not contemplate the assessment of personal property that is passing through, or is in the State for temporary purposes only. It could not be held that the goods and merchandize of a citizen of Iowa, passing from an Eastern city, by rail, through this State to his home in Iowa, on the first day of May in any year, could be legally assessed for taxation. Although in the State on the day the assessor is required to list all personal property for taxation, and coming within the letter of the statute, it would clearly be contrary to its spirit. The intention of the law-makers was only to subject property to taxation that is more permanently in the State at the time when required to be listed. But the extent of that permanency it would, under many circumstances, be difficult to define. It is, however, impracticable to lay down any rule that shall govern in all cases. Its ownership, and the uses for which it is designed, and the circumstances of its being in the State, are so various that it can not be embraced in any general rule.

Whilst the *situs* of personal property is, under many circumstances, considered by the law as being that of its owner, such is not the uniform rule. Under some circumstances it has for some purposes a different *situs* from that of the owner, and such is the case in regard to taxation. Where

personal property is permanently located at a particular place, it is liable to be listed there.

The boat was registered in Cairo, and when not in use it laid up in that place. The hands who operated the boat resided there, and the company had its business office in the city,—thus incontestibly showing that its home port was Cairo. Against this there are the simple facts that as to the corporation owning the half that was taxed, it was one of several corporations chartered by the statutes of three other States, but consolidated and acting as one company, and when the boat was in use it ran to the opposite shore of the river, in Kentucky,—one of the States granting a charter for the companies forming the consolidated corporation. These, undoubtedly, are important facts in determining the *situs* of this vessel for taxation.

We presume no one can or will question the fact that the half of the vessel belonging to the Illinois Central Railroad Company is liable to taxation in this State. That half is owned by a corporation in this State, the vessel is registered in this State, and when not in use it lies up in this State, and Cairo would seem to be its home port, and it is permanently located in this State. It is true, that when in use it plys between Cairo and Filmore, but still Cairo is, unquestionably, the home port of the vessel.

Both parties have referred to *St. Louis* v. *The Ferry Company*, 11 Wallace, U. S. R. 423, as sustaining their position. In that case the ferry company was incorporated by the laws of this State, but had its principal office in St. Louis, Missouri. There its president and other chief officers resided; there the usual business meetings were held, and the seal of the company was kept there; the stockholders of the company mainly resided there, but some resided in Ohio, some in New York and some elsewhere, but none in Illinois. The company's minor officers, such as engineers and pilots on its ferryboats, resided in Illinois, opposite St. Louis, where its real estate was situated, also its warehouse and some other

property. The ferryboats, when not in use, were laid up by the Illinois shore, and were forbidden by ordinance to remain at the St. Louis wharf longer than ten minutes at a time. On this state of facts the court held the boats of the ferry company were not liable to be taxed in Missouri, but in Illinois.

The court said, that in a qualified sense personal property accompanies its owner wherever he goes, and he may deal with it and dispose of it according to the law of his domicil. * * But this doctrine is not allowed to stand in the way of the taxing power in the locality where the property has its actual *situs* and the requisite legislation exists. Such property is, undoubtedly, liable to taxation there in all respects as if the proprietor were a resident of the same locality. The court further say: "The company has an office in Illinois. Its minor officers, such as its engineers and pilots, lived in Illinois, where its real estate, including a warehouse, was situated." That the " boats, when not in actual use, were laid up at the Illinois shore." * * * "Their relation to the city was merely that of contact there as one of the termini of the transit across the river in the prosecution of their business." "That the owner, in the eye of the law, was a citizen of that State, and from the inherent law of its nature could not emigrate or become a citizen elsewhere. As the boats were laid up on the Illinois shore when not in use, and the pilots and engineers who ran them lived there, that locality, under the circumstances, must be taken as their home port. They did not so abide within the city as to become incorporated with and form a part of its personal property. Hence, they were beyond the jurisdiction of the authorities by which the taxes were assessed, and the validity of the taxes can not be maintained."

The court does not hold that the taxes are illegal because the ferry company was organized under the laws of this State. On the contrary it does say, that the rule that personal property follows the *situs* of the owner is not allowed to stand in the

way of the taxing power where the property has its actual *situs.* Instead of saying that the property was taxable in this State because the ferry company is a corporation in this State, the court holds, that under the circumstances of the case the boats were taxable in this State. As much stress is laid on the fact that the minor officers resided in this State, that the Illinois shore was the home port, and the company had real estate and a warehouse thereon on the Illinois side of the river, if not more, than on the *situs* of the company.

In the case at bar, the company had an office in Cairo, and their boats laid up there when not in use; the boat was registered there, and plied between that and the opposite shore of the river, and the officers operating the boat resided there, and it is evident that this was the home port of the vessel. The circumstances are as strong to require the company to pay a tax on this property to this State as were the circumstances in that case.

In Boroughs on Taxation, sec. 46, it is laid down that the home port, or the port at which a vessel is required to be registered, is the domicil of the vessel.

In the case of *Hays* v. *The Pacific Mail Steamship Company,* 17 How. 596, where vessels were owned by a corporation in New York, and the vessels were registered in New York, it was held, that was their home port, and they were liable to taxation at their home port, and not in California, where they were engaged in the transportation of passengers on the Pacific coast, and ran into and out of California in business; and the case of *The People* v. *The Pacific Mail Steamship Company,* 58 N. Y. 242, announces the same rule. It is there said, the *situs* of sea-going vessels, for the purposes of taxation, is the port of registration, under the act of Congress, and that is the home port.

The case of *Battle* v. *Mobile,* 9 Ala. N. S. 234, holds that where a boat was registered in Mobile as a coasting vessel, and was plying on the waters of the Alabama river, it was liable

to be assessed and taxed in the city of Mobile, although the owner resided in Pennsylvania.

In the case of *Hays* v. *Pacific Mail Steamship Company, supra,* the court said: "We are satisfied that the State of California had no jurisdiction over the vessels for the purposes of taxation; they were not properly abiding within the limits, so as to become incorporated with other personal property of the State; they were there but temporarily, engaged in lawful trade and commerce, with their *situs* at the home port where the vessel belonged, and where the owners were liable to be taxed."

One of the principal, if not controling, facts to be considered seems to be the home port of the vessel—the place where it belongs, so as to become incorporated with the personal property permanently located in the State. This seems to be of more importance than the mere ownership, and hence the *situs* for the purposes of taxation.

We are clearly of opinion that Cairo was the home port of this vessel, and that was its *situs* for taxation, and it was properly assessed in this State for taxation; and the court erred in enjoining this portion of the tax. The decree, to that extent, is reversed.

We then come to the question of the tax assessed on the value of the "car-hoist" and the "third rail," as they are termed. It is claimed that they belong to the Illinois Central Railroad Company, and the complainant is not liable to pay taxes on them, or one-half of them. The evidence shows the "car-hoist" and third rail were laid by the Illinois Central Railroad Company on its own lands and at its own expense. As we understand it, from the very nature of the structure it is permanent in its character, and is attached to and has become a part of the soil to which it is connected; and if so, on what principle can another company be required to pay taxes on it?—not because it pays a stipulated sum for the privilege of using it jointly with the owner, for the promotion of the business of both. The Mississippi

8—94 ILL.

Central is not liable as owner, lessee or as being in possession of this property. It is owned by the Illinois Central, and is used by both companies; for the privilege of so using it, the Mississippi Central pays a specified consideration. As well say, where a person who owns the soil on which a house stands, permits another to occupy it jointly with him, and for which he receives a consideration, that the person thus permitted to occupy it should be assessed for one-half of the taxes on the lot and house. No one, we apprehend, would contend that it could be legally done; and we may ask, in what, if anything, a distinction, in principle, exists between the supposed case and that at bar? We are unable to perceive any that can be well founded. We are, therefore, of opinion complainant was no more liable to the tax imposed against it on the "car-hoist" or third rail on the track of the Illinois Central railroad than is one man liable to pay the taxes on another's land. In such a case, there is no legal authority for doing so, unless he has a taxable interest in the same; and when done without authority, a court of equity will restrain its collection from the person against whom it is illegally assessed, as being levied against him without warrant of law.

The court below, therefore, did right in enjoining this tax, and the decree of the Appellate Court, to that extent, is affirmed, but it is reversed as to the taxes levied on the boat. The injunction was improperly granted, and, to that extent, the decree of the Appellate Court must be reversed and the cause remanded.

*Decree reversed in part, and in part affirmed.*