## UNITED STATES v. GOELET.

### CERTIFICATES FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 631, 632.   Argued January 6, 7, 1914.—Decided February 24, 1914.

*Billings* v. *United States, ante,* p. 261, followed to the effect that the tax on the use of foreign-built yachts imposed by § 37 of the Tariff Act of 1909 is not an unconstitutional exercise of power by Congress, and it became due for the year 1909 on the first day of September, 1909.

While Congress may have the power to impose an excise duty on a citizen permanently domiciled abroad, such an imposition is so unusual that an intent to do so will not be presumed unless clearly expressed.

The expectation of those who sought the enactment of legislation may not be used for the purpose of affixing to such legislation, when enacted, a meaning which it does not express.

The tax imposed by § 37 of the Tariff Act of 1909 does not apply to the use of a foreign-built yacht owned by a citizen of the United States who was permanently resident and domiciled in a foreign country for more than one year prior to September 1, 1909, and to the levy of such tax.

THE facts, which involve the construction and constitutionality of § 37 of the Tariff Act of 1909, imposing a tax

on foreign-built yachts and the application of that section
to a yacht owned by· an American citizen permanently
domiciled abroad and which had not been within the ju-
risdiction of the United States during a part of the period
for which the tax was levied, are stated in the opinion.

*Mr. Assistant Attorney General Adkins,* with whom *Mr.
Karl W. Kirchwey* was on the brief, for the United States.[1]

*Mr. William D. Guthrie* for the yacht owner in this and
other cases argued simultaneously herewith.[2]

MR. CHIEF JUSTICE WHITE delivered the opinion of the
court.

The questions asked in both of these cases relate to
§ 37 of the Tariff Act of 1909 which we have construed in
several· opinions just announced.·· They both concern the
sum of excise duties levied on the foreign-built· yacht
Nahma, the one assessed for the year ending on the first
of September, 1909 and the other on the first of Septem-
ber, 1910. The cases were decided by the trial court at
the same time with other cases for a like period, the case
relating to the tax for 1909 having been· submitted on bill
and answer as a result of the overruling of a demurrer filed
by the Government to the answer of the defendant and the
election to plead no further, and the case involving the
levy for 1910 having been decided by the court along with
other cases without the intervention of a jury as·the result
of a stipulation between the parties. The certificate fully
states the situation as to both periods of taxation con-
forming ·to the conditions of fact which we have recapit-
ulated in the opinions in the two *Billings Cases, ante,*

[1] See argument, p. 269, *ante.*

[2] See argument, p. 263, *ante.*

pp. 261 and 289, and the questions asked concerning the construction of the statute, its operation and its constitutionality involve all the subject-matters which we have disposed of in the previous opinions. In both of these cases however, differing from those which we have previously decided, in the pleadings concerning the 1909 tax it was expressly averred and by the demurrer conceded that the owner of the yacht at least for a year prior to the levy of the tax, was domiciled in a foreign country and that the yacht whose use was taxed had a permanent situs in such country, and so far as the levy for 1910 is concerned that state of things as shown by the certificate was expressly covered by the findings of fact; and if the opinion of the trial court be considered, it will appear that it was one of these peculiarities of fact, that is, the permanent domicile abroad, which led that court, instead of deciding in favor of the tax, to hold that as to both periods it was unauthorized by the statute. To make the situation perfectly clear we quote from the certificate in the case concerning the 1909 tax (No. 631) the exact language of the answer on the subjects just stated, the equivalent of which is embraced in case involving the 1910 tax (No. 632), as follows:

"That the defendant was, on September 1, 1909, and for several years prior thereto had been permanently a resident of and domiciled at Paris, in the Republic of France; and that since 1901 her said yacht had not been within the jurisdiction of the United States, but had had a permanent situs within the jurisdiction of Great Britain."

For the purpose of enabling it to determine the influence of the facts thus stated upon the decision of these two cases, the court, in its certificate in addition to many questions involving the issues of construction and constitutionality which we have disposed of in the other cases asks two questions whose order of statement we rearrange as follows:

"II. Does the tax purporting to be imposed by said act of Congress apply to the use of a foreign-built yacht owned by a citizen of the United States who was permanently resident and domiciled in a foreign country for more than one year prior to September 1, 1909, and to the levy of such tax?

"I. Does the tax purporting to be imposed by section 37 of the act of Congress, approved August 5, 1909, apply to the use of a foreign-built yacht owned by a citizen of the United States, when such yacht, for a period of more than one year prior to September 1, 1909, and to the levy of such tax, was used wholly outside of the limits and territorial jurisdiction of the United States?"

It is manifest from what we have said that the response to these two questions will be substantially determinative of all the questions which the certificate propounds since if we answer either of them in the negative, the case will be disposed of and there will be no occasion to reply to the others, and if on the contrary we answer both of them in the affirmative there will be no need to do anything but state our reply to the other questions, since the reasons for such reply will be controlled by the opinions which we have previously announced. We come then to consider the questions in the order stated.

Not in the slightest degree questioning that there was power to impose the excise duty on the citizen owning a foreign-built yacht wholly irrespective of the fact that he was permanently domiciled in a foreign country and putting out of view all questions concerning the non-application of the statute to the case in hand purely because of the situs of the yacht itself, the single matter for decision is, do the terms of the statute provide for the payment by a citizen of the United States who has a permanent residence and domicile abroad of an excise duty because of the use by him as owner or charterer under the terms of the statute of a foreign-built yacht? It may not

be doubted, as observed by the trial court in these cases
(omitting the consideration of taxes imposed on property
having a situs within the jurisdiction of the taxing au-
thority), speaking in a general sense that the taxing power,
when exerted, is not usually applied to those, even albeit
they are citizens, who have a permanent domicile or
residence outside of the country levying the tax. Indeed
we think it must be conceded that the levy of such a tax·
is so beyond the normal and usual exercise of the taxing
power, as to cause it to be, when exerted, of rare occurrence
and in the fullest sense exceptional. This being true, we
must approach the statute for the purpose of ascertaining
whether its provisions sanction such rare and exceptional
taxation. Considering the text, we search in vain for the
express declaration of such authority. True, it is argued
by the United States, that as the tax is levied on any
citizen using a foreign-built yacht and as any includes all,
therefore the statute expressly embraces a citizen perma-
nently domiciled and residing abroad. But this argument
in effect begs the question for decision which is whether
the use of the general words, any citizen, without more
should be considered as expressing more than the general
rule of taxation, or in other words can be treated without
the expression of more as embracing the exceptional exer-
tion of the power to tax one permanently residing abroad.
As illustrative and throwing light on the real question for
decision, action taken by Congress in exerting its taxing
power is at least worthy of note. For instance the pro-
visions of the income tax law of June 30, 1864 (c. 173, 13
Stat. 223, 281), expressly extended that tax to those
domiciled abroad and a like purpose is beyond doubt ex-
pressed in the income tax of 1913 (subdivision 1 of the
Tariff Act of October 3, 1913). But without resting this
case upon the implication against the conferring of the
authority here claimed from the mere want of express
statement in the statute of the giving of such exceptional

power, and treating such implication as not in and of itself absolutely conclusive, we think when to the force of such inference, even though it be limited, there is added the weight arising from that which is expressly stated in the statute, the conclusion against want of power conferred to levy the tax here asserted is established. This arises from the command of the statute that the tax shall be levied "by the collector of customs of the district nearest the residence of the managing owner" etc., since the consequence of such command is to associate residence with citizenship and establishes such a relationship between them as to bring about the result which we have just stated. Nor do we think there is anything as suggested by the argument of the United States in the case of *Eidman* v. *Martinez*, 184 U. S. 578, which militates against the views just stated and this also is true of the suggestion made in argument concerning the circulation by those interested in the enactment, of the provision of a list of yachts which would become subject to the tax if the provision was enacted, which list included the yacht taxed in this case. The expectations of those who sought the enactment of legislation may not be used for the purpose of affixing to legislation when enacted a meaning which it does not express.

For the reasons just stated we conclude to answer the second question in the negative and not to reply to the others, as it becomes unnecessary to do so.

*And it will be so certified.*