## FIDES, A. G., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 5053.

Circuit Court of Appeals, Fourth Circuit.

Aug. 16, 1943.

732

Ellen E. O'Neil, of New York City (Lawrence R. Condon, of New York City, on the brief), for petitioner.

A. F. Prescott, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Carlton Fox, Sp. Assts. to Atty. Gen., on the brief), for respondent.

Cravath, DeGersdorff, Swaine & Wood, Roswell Magill, and George G. Tyler, all of New York City, on the brief as amici curiae.

Before SOPER, DOBIE, and NORTHCOTT, Circuit Judges.

DOBIE, Circuit Judge.

The Commissioner of Internal Revenue (hereinafter called the Commissioner) assessed against Fides, A. G. (hereinafter called petitioner) a surtax for the year 1936 and a delinquency penalty under Sections 351 and 291 of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Acts, pages 936, 920. This tax and the penalty were (after redetermination and adjustment) sustained by the Board of Tax Appeals (hereinafter called the Board, and now the Tax Court

of the United States) and petitioner has duly appealed.

Among the stipulations of facts were the following:

"1. The petitioner is a nonresident foreign corporation. During the year 1936 it was not engaged in trade or business within the United States nor did it have an office or place of business therein. It was incorporated in the year 1911 under the Laws of the Canton of Schaffhausen, Switzerland. Approximately fifteen years ago, it acquired a portfolio of American securities and since that time it has held and owned American securities and received the income therefrom consisting of dividends and interest. Its activities in the United States during the year 1936 and for many years prior thereto consisted only in effecting transactions in the United States in stocks and securities through a resident broker or custodian and in receiving the income from the securities held.

"2. The petitioner files its Federal income tax returns on the basis of cash receipts and disbursements.

"3. The authorized stock of the petitioner consists of 1,000,000 Swiss Francs consisting of 400 shares of the par value of 2500 Swiss Francs each. During the last half of the taxable year 1936 more than 50% in value of its outstanding stock was owned directly or indirectly by or for not more than five individuals. All of the stockholders of the petitioner during the entire year 1936 and at all times prior thereto were nonresident alien individuals not engaged in trade or business within the United States and not having an office or a place of business therein."

Sections 351, 291 and 233 of the applicable Revenue Act of 1936 are (in part) set out below:

"§ 351. Surtax on Personal Holding Companies.

"(a) Imposition of tax. There shall be levied, collected, and paid, for each taxable year (in addition to the taxes imposed by Title I), upon the undistributed adjusted net income of every personal holding company a surtax * * *.

"(b) Definitions. As used in this title—

"(1) The term 'personal holding company' means any corporation (other than a corporation exempt from taxation under section 101, and other than a bank, as defined in section 104, and other than a life-insurance company or surety company) if

—(A) at least 80 per centum of its gross income for the taxable year is derived from royalties, dividends, interest, annuities, and (except in the case of regular dealers in stock or securities) gains from the sale of stock or securities, and (B) at any time during the last half of the taxable year more than 50 per centum in value of its outstanding stock is owned, directly or indirectly, by or for not more than five individuals."

"§ 291. Failure to File Return

"In case of any failure to make and file return required by this title, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax: 5 per centum if the failure is for not more than thirty days with an additional 5 per centum for each additional thirty days or fraction thereof during which such failure continues, not exceeding 25 per centum in the aggregate. The amount so added to any tax shall be collected at the same time and in the same manner and as a part of the tax unless the tax has been paid before the discovery of the neglect, in which case the amount so added shall be collected in the same manner as the tax. The amount added to the tax under this section shall be in lieu of the 25 per centum addition to the tax provided in section 3176 of the Revised Statutes, as amended."

"§ 233. Allowance of Deductions and Credits

"A foreign corporation shall receive the benefit of the deductions and credits allowed to it in this title only by filing or causing to be filed with the collector a true and accurate return of its total income received from all sources in the United States, in the manner prescribed in this title; including therein all the information which the Commissioner may deem necessary for the calculation of such deductions and credits."

Two questions are, in this appeal, presented for our determination: (1) Is the petitioner subject to the tax? And (2) if so, was the penalty assessment valid? Both of these questions were answered affirmatively (and, we think, correctly) by the Board.

1. *Is Petitioner Subject to the Tax?*

Petitioner frankly admits that it falls within the literal words of Section 351,

and that it completely satisfies the objective criteria therein set out. But, as was said in the opinion of the Board (47 B.T.A. 280):

"It is argued that the intent and purpose of Congress in the enactment of that section was to force distributions of earnings by personal holding companies so that surtax might be laid upon and collected from such distributions upon their receipt by the stockholders. Upon this premise it is urged that the application of this section to a corporation whose stockholders are not subject to surtax is to extend the meaning of the section beyond the Congressional intent.

"Petitioner admits that it is within the definition of a personal holding company, as set out in subsection 351(b) (1), supra, because (1) its earnings are of the character there specified and (2) more than 50 percent of its capital stock was owned during the described period by not more than five individuals. It is obvious, concededly so, that petitioner is included in the unrestricted purview of 'any corporation' as provided by that subsection. In short, petitioner in effect admits it is within the taxed class if the language of the statute is controlling. It is urged, however, that in order to stay within the manifest purpose and policy of the legislation, as established by its history, the term 'any corporation' must be construed to mean 'any corporation whose stockholders would be subject to surtax on distributed corporate earnings.' It is contended that the ascertainment of the Congressional intent by reference to the history and purpose of the legislation which points to this construction, is justified by reason of the injustice and hardship of a literal application of the statute. Such application places on a foreign corporation, which could have no purpose in its organization or operation of avoiding surtax upon its nonresident foreign stockholders, a burden greater than that imposed on one organized and operated for that purpose."

■ The argument that the literal meaning of Section 351, so as to bring petitioner within its ambit, would accomplish a harsh and inequitable result, does not, in itself, justify us in giving to Section 351 the restricted meaning for which petitioner contends. That argument, we think, is adequately answered in the O'Sullivan Rubber Company case, 42 B.T.A. 721, affirmed by the Circuit Court of Appeals for the Second Circuit in 120 F.2d 845. See,

also, the cases of Foley Securities Corporation, 38 B.T.A. 1036, affirmed 8 Cir., 106 F.2d 731; Porto Rico Coal Co., 44 B.T.A. 221, affirmed 2 Cir., 126 F.2d 213.

■ A much stronger argument is that the petitioner, an alien corporation, does not come within the evil which Section 351 sought to prevent—the so-called "incorporated pocket-book"—since petitioner's distributions of dividends to its stockholders (also aliens) would not be subject to tax by the United States. A careful reading of the Congressional debates, and a study of the background and history of Section 351 fail to convince us that this was the sole purpose of that section. That it was a primary and major purpose is hardly open to doubt.

Thus, in the Preliminary Report of the House Subcommittee, submitted by its Chairman, Honorable Samuel Hill, we find, at page 7: "The effect of this system recommended by your subcommittee is to provide for a tax which will be automatically levied upon the holding company without any necessity for proving a purpose to avoid surtaxes." And, again in the report of the House Subcommittee on Proposed Revision, submitted by its Chairman, Honorable Fred Vinson, we find, with reference to Section 351, at page 21: "Liability is made automatic upon corporations *which come within specified objective standards,* relating to percentage of investment and similar income received, and to limited stock ownership. No proof of intent to avoid surtax is necessary." (Italics ours.)

■ We hold no brief for the anathema so often visited, in connection with the meaning of statutes, upon what Austin called Intensive Spurious Interpretation. Statutory universals are sometimes not what they seem. General terms describing a class of persons subject to a statute should be limited when a strictly literal (and purely analytic) application would encompass absurd results and would defeat, rather than subserve, the clear and manifest purpose of the statute. Qui haeret in litteris, haeret in cortice. And statutes should be construed in the newness of the spirit, not in the oldness of the letter. See, United States v. Palmer, 3 Wheat. 610, 4 L.Ed. 471; United States v. Katz, 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986.

We are familiar with many outstanding cases in which the United States Supreme Court did, in no uncertain terms, restrict the meaning of broad general terms in statutes. Among these are United States v. Kirby, 7 Wall. 482, 19 L.Ed. 278; Holy Trinity Church v. United States, 143 U.S. 457, 459, 463, 12 S.Ct. 511, 36 L.Ed. 226; Lau Ow Bew v. United States, 144 U.S. 47, 59, 12 S.Ct. 517, 36 L.Ed. 340; American Banana Co. v. United Fruit Co., 213 U.S. 347, 359, 29 S.Ct. 511, 53 L.Ed. 826, 16 Ann.Cas. 1047; United States v. Goelet, 232 U.S. 293, 34 S.Ct. 431, 58 L.Ed. 610; United States v. American Trucking Association, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345.

In each of those cases, however, was present a rather clear-cut reason for limiting the apparent generality of the statutory term involved. We cannot discern such a reason in the instant case. In these cases, it was, in general, impracticable by express language to incorporate the restricted meaning which the Supreme Court upheld. That is not the situation here. Congress well knew of the classification of corporations, on the fundamentum divisionis of the place of incorporation, into alien corporations and domestic corporations. This is readily apparent from even a cursory reading of federal revenue statutes. Had Congress, then, intended to apply Section 351 only to domestic corporations, nothing would have been simpler than to employ in this section the words "any domestic corporation" rather than the words, actually used, "any corporation." And, further, which was not true in those cases, Congress here specifically set out definite objective criteria to indicate crisply which corporations came within the statutory ambit. It is admitted that petitioner perfectly satisfied each and every one of those criteria.

■ Again courts should be extremely cautious not to add words to a statute that are not found in the statute—and should be careful, too, not to decrease deliberately the extension of a word or phrase by increasing its intension. Statutory Intensive Spurious Interpretation is the very rare exception, certainly not the rule. Shadowy though it may sometimes be, and however difficult may be its tracing, there is, though, a line, very real indeed, between the legislative function and the judicial function. Caminetti v. United States, 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168; La Belle Iron Works v. United States, 256 U.S. 377, 393,

41 S.Ct. 528, 65 L.Ed. 998; Smietanka v. First Trust & Savings Bank, 257 U.S. 602, 607, 42 S.Ct. 223, 66 L.Ed. 391; Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566; Crooks v. Harrelson, 282 U.S. 55, 51 S.Ct. 49, 75 L.Ed. 156.

■ Section 351, literally interpreted, does not, we think, lead to absurd results or arbitrary discrimination. The alien corporation, as to its activities within the United States, is treated in the same general manner as the domestic corporation. We see no adequate reason, under these circumstances, why Section 351 should be given an unusual and somewhat forced interpretation in order to tax the domestic corporation and to permit the alien corporation to escape the tax.

Our views in this connection, we think, are strengthened by the fact that the surtax of Section 351 falls only on the personal holding corporation. The distinction between such a corporation, on the one hand, (particularly when, as here, the term is defined and limited by precise, objective criteria) and the active business corporation, on the other hand, is an adventure in the realm of stark realism. Certainly, it is no forced figment of financial fancy. We do not mean to imply that personal holding corporations fall instinctively into the category of mala in se; yet they have been so often attuned to baser uses that Congress may well have singled them out for special treatment. And the only corporate classification undertaken by Section 351 might well be a dichotomy—personal holding corporations and non-personal holding corporations—rather than, as petitioner asserts, a classification into alien corporations and domestic corporations.

■■ Petitioner further urges that the inclusion of alien corporations within the surtax imposed by Section 351 violates treaties solemnly entered into between the Republic of Switzerland and the United States and is, in addition, beyond the taxing power of Congress, since it is a bold attempt to give extraterritorial effect to Section 351. This contention was not made before the Board. It seems to have been an afterthought, and we think not a very happy one, on the part of counsel for petitioner. We find nothing in Articles I and II of the Treaty between Switzerland and the United States, 11 Stat. 587, that would forbid the tax imposed by Section 351 upon the petitioner; for there is present here no such discrimination as this treaty forbids. And, as is stated in the brief of the Commissioner: "The condemnation of a tax upon income of a foreign corporation derived from sources within the United States, upon the ground stated (i. e. that Congress has no power to levy the surtax here in question, since this would amount to giving extraterritorial effect to the taxing statute) would carry in its wake a condemnation of tax upon income on all nonresident aliens derived by them from such sources." None of the cases cited by petitioner is authority for the proposition that the surtax imposed by Section 351 on alien corporations solely upon income derived from sources within the United States is beyond the taxing power of Congress.

*2. Penalty.*

Finally, petitioner insists that the imposition under Section 291, of the 25 per cent penalty by the Commissioner, which the Board upheld, was unjustifiable, harsh and inequitable. Section 291 imposes this penalty for failure to file a timely return "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The Commissioner and the Board have both found that the petitioner offered no "reasonable cause." We approve their finding.

■ The return of petitioner was not filed in time and was filed under protest. Petitioner's excuse is that "petitioner's attorney then believed and still believes that petitioner never was and is not now a personal holding company as such is defined in Section 351 of the Revenue Act of 1936." If the putative taxpayer, in any case of doubt, should be permitted to fail to file a tax return, hoping this failure would never be detected, and then if detection should follow, to escape the prescribed penalty by a mere statement that taxpayer's counsel entertained a subjective belief, whether well-founded or not, that taxpayer was not subject to the tax statute in question, then any statutory penalty provision would become less than a brutum fulmen. Particularly is this true as to alien corporations; for, as to these, the taxing authorities have scant sources of information. On this question, we need add little to what was said by this Court in Blenheim Co. v. Commissioner of Internal Revenue, 4 Cir., 125 F.2d 906. See, also,

O'Sullivan Rubber Co. v. Commissioner, 2 Cir., 120 F.2d 845, 848, 849; Lone Pine Lawn Corporation v. Helvering, 2 Cir., 121 F.2d 935; Georday Enterprises v. Commissioner, 4 Cir., 126 F.2d 384.

The decision of the Board of Tax Appeals is affirmed.

Affirmed.