### DELANEY, Collector of Internal Revenue, v. MURCHIE.

#### No. 4435.

United States Court of Appeals
First Circuit.

Oct. 28, 1949.

Leland T. Atherton, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, and Ellis N. Slack and Robert N. Anderson, Special Assistants to the Attorney General, and George F. Garrity, United States Attorney, and W. Arthur Garrity, Jr., Assistant U. S. Attorney, both of Boston, Mass., with him on brief), for appellant.

Robert G. Dodge, Boston, Mass. (Harold S. Davis of Boston, Mass., with him on brief), for appellee.

Before MAGRUDER, Chief Judge, WOODBURY, Circuit Judge, and CLIFFORD, District Judge.

MAGRUDER, Chief Judge.

Appellee, as executor under the will of his deceased wife, Ethel Adine Murchie, brought this action in the court below for recovery of federal estate taxes alleged to have been illegally collected by the defendant. The issue of law presented was whether jewelry and other personal effects which a nonresident alien was carrying with her in the course of a trip from Canada through the United States to a projected destination in Nassau, and which were physically present in Florida at the date of her fortuitous death there during a brief stopover en route, constituted property "situated in the United States" within the meaning of Internal Revenue Code, § 861(a), 26 U.S.C.A. § 861(a). The facts were not in dispute, and upon motions by each party for summary judgment, the district court gave judgment for the plaintiff. We think that this judgment, now before us on appeal, should be affirmed.

Somewhat more fully stated, the facts are as follows. Mrs. Murchie during all her lifetime was a citizen of Canada. Shortly after her marriage in 1931 to appellee, an American citizen, the couple established their permanent residence in Nassau in the Bahama Islands, and this was still their domicil at the date of Mrs. Murchie's death. In 1941 she was stricken with coronary thrombosis, and thereafter remained in precarious health. The summer of 1942 was spent in St. Andrews, New Brunswick. Intending to return to her home in Nassau

for the winter, she and her husband left St. Andrews in November, 1942. They planned to stop off for a short while at Winter Park, Florida, both to break the journey and to consult a doctor there who had been recommended to Mrs. Murchie. Her husband rented a house in Winter Park with the arrangement and understanding that when they left for Nassau, which they intended to do not later than January 1, 1943, the lease would be taken over by a friend who wished to make his residence in Florida. During the weeks after her arrival in Winter Park, Mrs. Murchie was confined to bed most of the time under care of the physician. She had another heart attack and died in Winter Park on December 17, 1942.

When Mrs. Murchie left Canada for Nassau in 1942 she brought with her, as had been her custom in travelling, a small box containing valuable jewelry, and also clothing and other personal effects of substantial value. Upon coming into the United States en route, the jewelry was entered on her customs papers as an item of personal effects of a nonresident travelling through. Her intention, which remained unchanged, and which was frustrated only by her death, was to carry these personal effects along with her to her home in Nassau.

Mr. Murchie as executor filed the estate tax return required by law for the estate of a nonresident decedent not a citizen of the United States, and paid to defendant the amount of estate tax shown thereon to be due. The Commissioner ruled that there should have been included in the gross estate $30,234.60 on account of jewelry, and $1,000 on account of clothing and personal effects, all of which property belonged to the decedent and was in Florida at the time of her death, and determined a deficiency in estate tax accordingly. The taxpayer paid the deficiency tax, made due claim for refund thereof, and upon rejection of the claim by the Commissioner filed the present complaint against the Collector.

In urging reversal of the judgment below, the government takes a simple, clean-cut position: that as the basis of estate tax liability the statute requires no more than the fact, here undisputed, of actual physical presence in the United States of the jewelry and clothing aforesaid at the moment of Mrs. Murchie's death. If this were so, then it would follow inescapably—as the government conceded at the oral argument—that Mrs. Murchie's personal effects would have been subject to the estate tax even if, en route from Canada to Nassau and contemplating no stopover at all in Winter Park, Florida, Mrs. Murchie had died on the train before reaching Florida. In the absence of plain and compelling statutory language, the courts should reject an interpretation carrying with it so harsh and inhospitable an exaction as applied to a nonresident alien passing through our borders or tarrying briefly in our midst. Cf. United States v. Goelet, 1914, 232 U.S. 293, 34 S.Ct. 431, 58 L.Ed. 610.

In the case of a nonresident not a citizen of the United States, § 861(a) of the Code requires to be returned and valued that part of the decedent's gross estate "which at the time of his death is situated in the United States". This general language is applied to property of all kinds, intangible as well as tangible. But the word "situated", which in one sense carries a spatial connotation, obviously was used by Congress in a different and metaphorical sense, for property interests of an incorporeal or intangible sort cannot literally be said to exist in space. This was clearly recognized by the Supreme Court in the leading case of Burnet v. Brooks, 1933, 288 U.S. 378, 388–389, 53 S.Ct. 457, 459, 77 L.Ed. 844, 86 A.L.R. 747: "The Congress was exercising its taxing power. Defining the subject of its exercise, the Congress resorted to a general description referring to the situs of the property. The statute made no distinction between tangible and intangible property. It did not except intangibles. It did not except securities. Save as stated, it did not except debts due to a nonresident from resident debtors. As to tangibles and intangibles alike, it made the test one of situs, and we think it is clear that the reference is to property which, according to accepted principles, could be

deemed to have a situs in this country for the purpose of the exertion of the federal power of taxation."

In other words, the statute remits us to a legal concept of situs which, as it has been developed in the cases, is certainly not synonymous with physical presence and which, indeed, has been applied to certain kinds of property interests incapable of actual location in space. The concept has played its part in judicial formulation of principles of the conflict of laws, and to some extent, under the guise of jurisdiction to tax, though not always with consistency or clarity, has been read into the due process clause of the Fourteenth Amendment as a limitation upon the taxing power of the States of our Union. No doubt the course of development of the rules of situs has been somewhat influenced, consciously or unconsciously, by considerations of policy, in the direction of minimizing the hardships of multiple taxation. Perhaps it is more accurate to say that the inquiry really is not to find where the property is located in space, with the automatic consequence that, if the property is found to be within the territorial limits of a particular state, such state has power or jurisdiction to deal with it, but rather, whether the property, considering its particular nature, has such a relationship to the state as to make it reasonable to attribute to that state the power of dealing with it in some particular way. The conclusion of the latter inquiry, expressed in terms of situs, might be that the property has a situs in the state for one purpose and not for another—for instance, the mere transitory presence of a chattel in the state might be deemed to establish its situs for the purpose of giving the state jurisdiction to deal with the article as a menace to health, or perhaps to administer the property for the benefit of local creditors of a nonresident decedent, but the same transitory presence might not establish its situs in the state for the purpose of the imposition of an estate tax. In this sense, the concept of situs may be said to be a fiction, or a judicial myth, or a "magnificent fraud", as some realists prefer to call it. See Lowndes, Spurious Conceptions of the Constitutional Law of Taxation, 47 Harv.L.Rev. 628 (1934). But the fact remains that Congress, in adopting the test of situs, has in general cast upon the courts the task of applying that judge-made concept to concrete cases.

It is interesting to note that in a few particulars Congress did give more specific guidance to the courts.

Thus § 862(a) provides that for purposes of the federal estate tax "stock in a domestic corporation owned and held by a nonresident not a citizen of the United States shall be deemed property within the United States". This provision was first inserted in the estate tax by § 403(b) (3) of the Revenue Act of 1918, 40 Stat. 1099. At that time, decisions under the Fourteenth Amendment indicated, perhaps not conclusively, that the property right of a nonresident decedent stockholder might be deemed to have a taxable situs within the state of incorporation. See Blackstone v. Miller, 1903, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439; Corry v. City of Baltimore, 1905, 196 U.S. 466, 474, 25 S.Ct. 297, 49 L.Ed. 556. This view was later repudiated in First National Bank of Boston v. State of Maine, 1932, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401, which, in turn, was overruled in State Tax Commission of Utah v. Aldrich, 1942, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed 1358, 139 A.L.R. 1436. But whatever view may ultimately prevail as to the constitutional power of a state, under the Fourteenth Amendment, to lay an estate or succession tax upon shares in a domestic corporation owned by a nonresident decedent, Congress has, in § 862(a), specifically commanded, so far as the federal estate tax is concerned, that stock in a domestic corporation owned by a nonresident alien decedent shall be deemed property within the United States, and included within the gross estate.

Another instance of specific statutory guidance is found in § 863(b), to the effect that local bank deposits of a nonresident alien who was not engaged in business in the United States at the time of his death shall not, for purposes of the federal estate tax, be deemed property within the United States. This provision first appeared in

448

the estate tax in § 403(b) (3) of the Revenue Act of 1921, 42 Stat. 280. Under the precedents then extant, bank deposits of a nonresident decedent would have been deemed to have a taxable situs at the place of deposit. Blackstone v. Miller, 1903, 188 U.S. 189, 23 S.Ct. 277, 47 L.Ed. 439, a case which was later overruled in Farmers Loan & Trust Co. v. State of Minnesota, 1930, 280 U.S. 204, 50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000, and Baldwin v. State of Missouri, 1930, 281 U.S. 586, 50 S.Ct. 436, 74 L.Ed. 1056, 72 A.L.R. 1303. But the authority of Blackstone v. Miller was revived and reaffirmed in State Tax Commission of Utah v. Aldrich, 1942, 316 U.S. 174, 62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436. Again, whatever view may ultimately prevail as to the constitutional power of a state, under the Fourteenth Amendment, to lay an estate or succession tax upon local bank deposits owned by a nonresident decedent, Congress has specifically commanded, in § 863(b), that such property shall not be included within the gross estate, for federal estate tax purposes, if the decedent was not engaged in business in the United States at the time of his death.

As to the type of property involved in the case at bar, chattels, the statute gives no explicit guidance. Congress might readily have said, if such had been its intention, that for purposes of § 861(a) chattels owned by a nonresident alien decedent shall be deemed to be situated within the United States if the same were actually physically present in this country, however transitorily, at the date of the death. But Congress chose to leave the matter at large, to be determined by the application to the property in question of judicially developed concepts of situs.

 It is clear from a long line of decided cases that the situs of a chattel has not been deemed to be determined by its mere physical presence at a given place on the tax day. Upon the contrary, the concept involves some degree of permanence, an established abiding place or home base for the chattel, analogous to the notion of domicil as applied to the person. As stated by Holmes, J., in New York Central & H. R. R. v. Miller, 1906, 202 U.S. 584, 597, 26 S.Ct. 714, 717, 50 L.Ed. 1155: "Using the language of domicil, which now so frequently is applied to inanimate things, the state of origin remains the permanent situs of the property, notwithstanding its occasional excursions to foreign parts." Particularly, as respects articles of jewelry and apparel, appertaining to the person of the owner, usually kept under his personal supervision and often carried about him on his journeys, the ancient maxim of the law, mobilia sequuntur personam, has retained some vitality, and the situs of such property has been regarded as being at the domicil of the owner. See Eidman v. Martinez, 1902, 184 U.S. 578, 581, 22 S.Ct. 515, 46 L.Ed. 697; First National Bank of Boston v. State of Maine, 1932, 284 U.S. 312, 329, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401. It is recognized that such articles may be detached from the person of the owner, and given an abiding place of some permanence in a state other than that of the domicil, with the consequence of shifting the taxable situs to the other state. But this consequence does not result from mere temporary presence of the chattel in the state, particularly when the nonresident owner is simply carrying the article with him on a journey through.

The cases expressing the foregoing concept of situs, as applied to chattels, are much too numerous for full citation. Without laboring the point, we have collected some of the cases in the footnote.*

* Hays v. Pacific Mail Steam-Ship Co., 1854, 17 How. 596, 599–600, 15 L.Ed. 254; City of St. Louis v. Wiggins Ferry Co., 1870, 11 Wall. 423, 432, 20 L. Ed. 192; Morgan v. Parham, 1872, 16 Wall. 471, 476, 478, 21 L.Ed. 302; Old Dominion S. S. Co. v. Commonwealth of Virginia, 1905, 198 U.S. 299, 308–309, 25 S.Ct. 686, 49 L.Ed. 1059, 3 Ann.Cas.

1100; Ayer and Lord Tie Co. v. Commonwealth of Kentucky, 1906, 202 U.S. 409, 421–423, 26 S.Ct. 679, 50 L.Ed. 1082, 6 Ann.Cas. 205; Southern Pacific Co. v. Commonwealth of Kentucky, 1911, 222 U.S. 63, 72, 32 S.Ct. 13, 56 L.Ed. 96; Frick v. Commonwealth of Pennsylvania, 1925, 268 U.S. 473, 45 S.Ct. 603, 69 L.Ed. 1058, 42 A.L.R. 316; Blodgett v. Silber-

City Bank Farmers Trust Co. v. Schnader, 1934, 293 U.S. 112, 55 S.Ct. 29, 79 L.Ed. 228, well illustrates the sort of factual basis which has been held sufficient to establish a taxable situs for chattels in a state other than that of the domicil of the owner. In that case a New York resident died owning paintings which at the moment of death were physically present in a museum in Pennsylvania under loan from the owner. The Court ruled that the paintings had acquired a taxable situs in Pennsylvania and upheld the imposition of an inheritance tax upon such property by the State of Pennsylvania. Prior to making the loan the owner had kept the pictures in New York. But in 1928, nearly three years before his death, the owner had sent the pictures to the Pennsylvania museum on loan, surrendering his lease for the New York storage space at the same time. Thereafter the pictures remained in the Pennsylvania museum, with the understanding that at any time on the owner's request the pictures would be returned to him. However, it did not appear that the owner "ever intended to have the pictures returned to New York at any definite date or upon the happening of any event or at all." 293 U.S. page 120, 55 S.Ct. page 31. He had, in fact, expressed a willingness to sell the collection as a whole for presentation to the Pennsylvania museum or to a similar institution. The Court said, 293 U.S. page 120, 55 S.Ct. page 31: "The location of the portraits in Pennsylvania was not merely transient, transitory, or temporary, but it was fixed in an established abiding place in which they remained for a long time. Undoubtedly, they became subject to the taxing power of the state. * * * By sending them into Pennsylvania and by his omission to have them returned to New York and his lack of definite intention ever so to do, Clarke failed to maintain an actual situs in New York and created one for them in Pennsylvania."

Though it may be beyond the constitutional power of a state, under the Fourteenth Amendment, to impose an inheritance tax upon chattels of a nonresident decedent transitorily present in the state at the date of death, it does not follow that the Federal Government lacks power to levy an estate tax upon chattels of a nonresident alien decedent under similar circumstances. The distinction between the two situations is extensively set forth and explained by Hughes, C. J., in Burnet v. Brooks, 1933, 288 U.S. 378, 400 et seq., 53 S.Ct. 457, 77 L.Ed. 844, 86 A.L.R. 747. See Lowndes, Spurious Conceptions of the Constitutional Law of Taxation, 47 Harv. L.Rev. 628, 634-5 (1934). The taxpayer indeed concedes in the present case that Congress has power to impose an estate tax in circumstances like the present. But we are not now concerned with a question of constitutional power, but rather with the question whether the statute, properly interpreted, sufficiently evinces an intention on the part of Congress to make such an extreme and unusual exercise of power. For the reasons already discussed above, we are constrained to reject the statutory construction advanced by the government.

It is urged by the government that its view is supported by the long-established administrative interpretation of § 861(a) of the Internal Revenue Code and the corresponding sections of prior Revenue Acts; that the Treasury Regulations applicable to estate tax cases involving nonresident alien decedents have always applied as the sole test of the includability of tangible personal property in their taxable estates whether such property, at the date of death, was "physically situated" in the United States. We think the language of the Regulations is far from conclusive. Indeed, § 81.55 of

man, 1928, 277 U.S. 1, 18, 48 S.Ct. 410, 72 L.Ed. 749; City Bank Farmers Trust Co. v. Schnader, 1934, 293 U.S. 112, 120, 55 S.Ct. 29, 79 L.Ed. 228; Semple v. Commonwealth, 1918, 181 Ky. 675, 682, 205 S.W. 789, 792; Irvin v. New Orleans, St. Louis and Chicago R. Co., 1879, 94 Ill. 105, 109, 34 Am.Rep. 208; Carlos Ruggles Lumber Co. v. Commonwealth, 1927, 261 Mass. 445, 448, 158 N.E. 897; State v. Haight, 1863, 30 N.J.L. 428; Brock & Co. v. Board of Supervisors, 1937, 8 Cal.2d 286, 65 P.2d 791, 110 A. L.R. 700.

450

Reg. 105 seems to use the phrase "situated within the United States" as synonymous with "having its situs within the United States", consistently with the language of the Supreme Court in Burnet v. Brooks, 1933, 288 U.S. 378, 388-389, 53 S.Ct. 457, 77 L.Ed. 844, 86 A.L.R. 747, quoted above. It is significant that the government has not cited to us a single case in which the Commissioner has asserted an estate tax liability under circumstances comparable to those here present; nor have we found any such case.

It is true, as suggested by the government, that it might be somewhat more convenient for the Commissioner if all he had to do to establish taxability in cases of this sort were to ascertain whether the chattels in fact were physically present in the United States, however transitorily, at the date of death. This is a consideration that might have been given weight by Congress; but, as we have seen, Congress with certain exceptions above noted chose to cast the taxing act in general terms of the legal concept of situs.

The judgment of the District Court is affirmed.